# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-0494


**STATE OF LOUISIANA**

**VERSUS**

**DEANDRE JOHNSON**


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 142,405-A
HONORABLE MARK A. JEANSONNE., DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.


**AFFIRMED.**

**Charles A. Riddle III**
**District Attorney, Twelth Judicial District**
**Anthony F. Salario, Assistant District Attorney**
**P.O. Box 503**
**Marksville, LA 71351**
**(318) 240-7123**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P.O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Deandre Johnson**

PETERS, J.

After his conviction for manslaughter, the State of Louisiana (state) charged the defendant, Deandre Johnson, as a habitual offender. Subsequently, the trial court adjudicated the defendant as a fourth felony offender and sentenced him to life imprisonment without the benefit of parole, probation, or suspension of sentence. The defendant appealed his adjudication and sentence, asserting three assignments of error. For the following reasons, we find no merit in the assignments of error and affirm the adjudication and sentence in all respects.

## DISCUSSION OF THE RECORD

This matter is before this court for the second time. The state initially charged the defendant with, and a jury convicted him of, second degree murder, a violation of La.R.S. 14:30.1. On appeal, this court reversed the conviction, vacated the sentence, and entered a conviction for the offense of manslaughter, a violation of La.R.S. 14:31. This court then remanded the matter to the trial court for resentencing. *See State v. Johnson*, 06-1263 (La.App. 3 Cir. 2/7/07), 948 So.2d 1229, *writs denied*, 07-467, 07-509 (La. 10/12/07), 965 So.2d 398, 399. However, before the defendant could be sentenced on the manslaughter conviction, the state filed a bill of information charging him as a multiple offender under the Louisiana Habitual Offender Law, La.R.S. 15:529.1. The bill of information, which was filed on December 6, 2007, listed the prior felonies as simple burglary of which he was convicted April 14, 1992; carnal knowledge of a juvenile of which he was convicted on August 16, 1994; illegal possession of stolen things of which he was convicted on March 18, 2002; and carnal knowledge of a juvenile of which he was convicted on August 5, 2002. The trial court set the multiple offender hearing for January 15, 2008.

On January 2, 2008, the defendant filed a motion to quash the multiple offender bill of information. In that motion, the defendant alleged that the only reason for the filing of the bill of information was the state's desire to "exert vindictiveness" because he was successful in his appeal of the second degree murder conviction. Despite having the multiple offender hearing already fixed for January 15, 2008, the trial court set this motion for hearing on January 31, 2008. On February 4, 2008, the defendant filed a second motion to quash the bill of information. In this second motion, the defendant asserted that because the minute entries evidencing the prior convictions did not establish that he waived his constitutional rights before entering guilty pleas to the charges or that he was even explained his rights in the plea proceedings, he should only be sentenced to the manslaughter offense without any enhancement thereof. The trial court set this motion for hearing on March 20, 2008. Although the defendant was represented by counsel, both of these motions were filed in proper person.

Despite the existence of the pending motion to quash, the trial court held the hearing scheduled for January 15, 2008. At the beginning of the hearing, the defendant's counsel requested a continuance based on the assertion that he had only received the motion to quash on that date. The trial court rejected the request for continuance and proceeded with the multiple offender hearing.

In support of its position, the state introduced the bills of information and court minutes associated with the four prior convictions listed on the multiple offender bill of information as well as testimony and fingerprint evidence to establish that the defendant was the same person who committed those offenses. At the end of the

2

hearing, the trial court did not dispose of the issues before it. Instead, on February 19, 2008, it held a second hearing.

At the February 19 hearing, the defendant again raised his motions to quash. To support his position, he requested copies of the colloquies in his prior convictions, but the trial court rejected these requests. The trial court then adjudicated the defendant a multiple felony offender and, on the same day as the hearing, filed written reasons for judgment wherein it found the defendant to be a fourth felony offender.[1] It further held that there existed no evidence of the state filing the bill of information for a vindictive purpose, noting that it would have been a vain and useless act to have done so at the time of the second degree murder conviction.

On March 19, 2008, the trial court sentenced the defendant to life in prison without the benefit of probation, parole, or suspension of sentence. In his appeal, the defendant asserts three assignments of error: (1) that the multiple offender proceedings against him were flawed; (2) that the trial court erred in denying his pro se motion to quash the bill of information charging him as a multiple offender; and (3) that the trial court erred in not considering his second pro se motion to quash the bill of information and in overruling his counsel's objection to the filing of the said bill of information.[2]

---

[1]The trial court recognized all of the convictions as valid convictions, including the manslaughter conviction. Thus, the trial court recognized in its reasons that the defendant had actually been convicted of five felonies rather than four.

[2]In his third assignment of error, the defendant asserts, as an alternative argument, that if the trial court did in fact rule on his second motion to quash, the trial court erred in rejecting it.

OPINION

### *Assignment of Error Number One*

In his first assignment of error, the defendant contends that the multiple offender proceedings against him were flawed (1) because he was not charged as a fourth felony offender by a grand jury indictment, and (2) because he was denied a jury trial in the habitual offender proceedings. In considering these arguments, we first note that the defendant raised no objection with regard to either issue in the trial court proceedings. The defendant acknowledges that La.Code Crim.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence," but asserts that this Article is not applicable to the issues now before us because these issues are jurisdictional and can be raised at any time. Rather than addressing the jurisdictional issue, we will dispose of these issues on the merits.

### *Grand Jury Issue*

In support of his position, the defendant cites this court to the case of *State v. Donahue*, 355 So.2d 247 (La.1978), wherein the supreme court concluded that a prosecution for second-degree murder, brought by bill of information rather than by a grand jury indictment, was an absolute nullity.[3] However, not only do we find that the decision in *Donahue* is distinguishable from the issue now before us, but the jurisprudence of this state does not support the defendant's argument. Louisiana Constitution Article 1, § 15, requires that a prosecution "for a capital crime or a crime punishable by life imprisonment" be instituted by grand jury indictment.[4] In

---

[3]The supreme court noted in a footnote that the error was jurisdictional and, therefore, could be raised at any time.

[4]This requirement is procedurally codified in La.Code Crim.P. art. 382(A).

*Donahue*, the defendant was convicted of an offense punishable by "life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La.R.S. 14:30.1(B). However, in the matter before us, the defendant was adjudicated as a habitual offender, and the conviction which gave rise to this adjudication is of an offense which does not carry a life imprisonment penalty.[5] Furthermore, in *State v. Alexander*, 325 So.2d 777 (La.1976), the supreme court concluded that the requirements of La.Const. art. 1, § 15 and La.Code Crim. P. art. 382 did not apply to the institution of enhanced penalty proceedings.

While the defendant raises a number of arguments to suggest that the decision in *Alexander* is incorrect and should be revisited,[6] we find no subsequent decision that would suggest this holding is not still the supreme court's position on this issue. In fact, all of the jurisprudence on this issue reflects a consistent conclusion that a grand jury indictment is not required to institute a habitual offender proceeding, even if the effect of the adjudication would be a life sentence. *See State v. Williams*, 326 So.2d 815 (La.1976); *State v. Maduell*, 326 So.2d 820 (La.1976); *State v. Jolla*, 337 So.2d 197 (La.1976); *State v. Overton*, 337 So.2d 1201 (La.1976); *State v. Delandro*, 01-2514 (La.App. 1 Cir. 5/10/02), 818 So.2d 1011; *State v. Collins*, 04-1443 (La.App. 5 Cir. 7/26/05), 910 So.2d 454; *State v. Smith*, 05-375 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, *writ denied*, 07-811 (La. 1/11/08), 972 So.2d 1159; *State v. Jackson*, 05-1281 (La.App. 4 Cir. 11/29/06), 947 So.2d 115, *writ denied*, 07-24 (La. 9/14/07), 963 So.2d 996; *State v. Wilson*, 06-1421 (La.App. 4 Cir. 3/28/07), 956 So.2d 41, *writ*

---

[5]Louisiana Revised Statutes 14:31(B) provides for a maximum incarceration penalty of forty years for the commission of the offense of manslaughter.

[6]The defendant asserts that the decision in *Alexander* conflicts with subsequent supreme court decisions, and that subsequent federal jurisprudence requires reversal of the *Alexander* decision on due process grounds.

*denied*, 07-1980 (La. 8/22/08), 988 So.2d 253; *State v. Mickel*, 07-47 (La.App. 5 Cir. 5/29/07), 961 So.2d 516, *writ denied*, 07-1422 (La. 1/7/08), 973 So.2d 732; *State v. Colton*, 07-252 (La.App. 3 Cir. 10/31/07), 968 So.2d 1239, *writ denied*, 07-2296 (La. 4/25/08), 978 So.2d 364. Therefore, we find no merit in this portion of the defendant's first assignment of error.

### *Jury Trial and Other Elements Issues*

The defendant also asserts that federal jurisprudence requires that he be tried by jury in the habitual offender proceedings—that a jury trial is mandated anytime there exists external matters or issues that do not appear on the face of the documents admitted as proof of the state's position—and that such elements exist (and remain unproven) in this case. In support of this position, he points this court to the holdings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), and *Shepard v. U. S.*, 544 U.S. 13, 125 S.Ct. 1254 (2005). Thus, the defendant argues, failure to afford him a jury trial violates U.S. Const. amend. VI granting the right to a jury trial, as well as the Due Process Clause of U.S. Const. amend XIV.

We find these cases to be distinguishable from the matter now before us. In *Apprendi*, 530 U.S. 466, 490, the Supreme Court stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Shepard*, the Supreme Court held that inquiry under the Armed Career Criminal Act to determine whether a guilty plea to burglary under a non-generic statute necessarily admitted elements of the generic offense was limited to the terms of the charging document, to the terms of a plea agreement or transcript of colloquy between the trial judge and the defendant in which the defendant confirmed

6

the factual basis for the plea, or to some comparable judicial record of this information. Thus, the federal trial court could not consider police reports or complaint applications in determining whether prior state court convictions were violent felonies within the meaning of the act.

In the matter now before us, there exists no unproven fact that would increase the penalty imposed. Additionally, this issue has been directly addressed by the courts of this state and those decisions have consistently rejected a defendant's right to a jury trial in habitual offender proceedings. *See State v. Washington*, 05-1006 (La.App. 4 Cir. 5/10/06), 931 So.2d 1120, *writ denied*, 06-1483 (La. 12/15/06), 944 So.2d 1272, *cert. denied*, __ U.S. __, 127 S.Ct. 2115 (2007); *State v. Gauthier*, 07-743 (La.App. 4 Cir. 3/12/08), 978 So.2d 1161; *Smith*, 913 So.2d 836; *Wilson*, 956 So.2d 41; *State v. Dozier*, 06-621 (La.App. 4 Cir. 12/20/06), 949 So.2d 502, *writ denied*, 07-140 (La. 9/28/07), 964 So.2d 350; *State v. Dunbar*, 06-1030 (La.App. 4 Cir. 3/19/08), 981 So.2d 51. We find no merit in this assignment of error.

### *Assignment of Error Number Two*

In this assignment of error, the defendant asserts that the trial court erred in rejecting his argument raised, by the January 2, 2008 pro se motion, to quash the habitual offender bill of information because of the state's desire to punish him for his success in having his second degree murder conviction set aside. This issue was discussed thoroughly in *State v. Howard*, 02-2435, pp. 6-7 (La.App. 4 Cir. 3/19/03), 843 So.2d 439, 443, wherein the court stated the following:

> In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the court held that the Due Process Clause of the Fourteenth Amendment prevented an increased sentence following a retrial if the increase in the sentence was motivated by vindictiveness against the defendant, because the fear of

such retaliation would have a chilling effect on the defendant's exercise of his appeal rights. The court held that, when a judge imposes a more severe sentence upon a defendant after a new trial, the reasons must affirmatively appear in the record and must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. The court in *Pearce* found that this need for objective information arises because, without it, there is a presumption that the greater sentence is imposed for a vindictive purpose.

The Louisiana Supreme Court followed *Pearce* in *State v. Rutledge*, 259 La. 543, 250 So.2d 734 (1971), in which a defendant's guilty plea and sentence of one year imprisonment were vacated and defendant was subsequently tried before a jury, convicted, and sentenced to two and one-half years imprisonment. Because the reasons for the increase in the sentence did not appear in the record, the court found that the second sentence was constitutionally objectionable under *Pearce*. See also *State v. Allen*, 446 So.2d 1200, 1202-1203 (La.1984).

In *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989), the defendant entered guilty pleas to charges of burglary and rape in exchange for the dismissal of a sodomy charge. The defendant later successfully had his guilty pleas vacated by an appellate court. He then proceeded to trial on all three original charges, was convicted on each, and received greater sentences than those imposed after his guilty pleas. The trial court stated that the greater sentences were being imposed because of evidence presented at trial of which the court was unaware at the time of the defendant's first sentencing. The United States Supreme Court found that, when a greater sentence is imposed after a trial than was imposed after a guilty plea, the presumption of vindictiveness present in *Pearce* does not exist because the trial court is generally privy to less relevant sentencing information after a plea than after a trial, such as the full nature and extent of the crimes and the defendant's conduct during the trial itself, and because the factors for leniency attendant to a guilty plea are no longer present after a trial. *Alabama v. Smith*, 490 U.S. at 801, 109 S.Ct. at 2205-06.

The defendant argues that although the holding in *North Carolina v. Pearce* was directed at judges, its rationale is applicable to the prosecution. He asserts that because the state has discretion in charging a defendant under the habitual offender laws, it should lose that ability if it treats a defendant, who chose to exercise certain constitutional rights, unfairly. He argues that the burden is on the state to prove that

8

its actions were not vindictive and to give its reasons for seeking the enhancement of sentence, and in this case, the state failed to do so.

When this issue was first addressed,[7] the state informed the trial court that its action in billing the defendant as a habitual offender was based on nothing more than the fact that it believed the original sentence to be appropriate for the offense committed. In other words, the habitual offender billing was not vindictive in nature, and that nothing in the law prohibited its filing. The defendant presented nothing to establish the state's motivation as anything else. At the February 19, 2008 hearing, the trial court finally rejected the defendant's motion.

We reject the defendant's assignment on this issue, finding nothing in the record to establish proof of his claim of vindictiveness.

### *Assignment of Error Number Three*

In his final assignment of error, the defendant asserts that the trial court erred in rejecting his second pro se motion to quash the habitual offender bill of information and erred in rejecting his defense counsel's objection to the filing of the multiple bill. He bases this on the argument that the court minutes, introduced to establish the prior convictions, failed to establish whether he was informed of his Constitutional rights as well as the penalties for subsequent offenses or that he understood his rights and the impact of subsequent criminal activity when he entered his guilty pleas to the prior charges.

In considering this assignment of error, we are guided by the supreme court decision in *State v. Carlos*, 98-1366 (La. 7/7/99), 738 So.2d 556. In that opinion, the

---

[7]The motion was scheduled for a hearing on January 31, 2008, but was first addressed at the habitual offender proceedings held January 15, 2008. After listening to argument on that date, the trial court allowed the defendant to reserve the issue for a future date. The trial court ultimately denied the motion after a February 19, 2008 hearing.

9

supreme court concluded that the state's initial burden in habitual offender proceedings, where a defendant denies the allegations contained in the bill of information concerning the validity and or existence of prior conviction, is "to prove the existence of the prior guilty pleas and that the defendant was represented by counsel when they were taken." *Id.* at 559. The burden then shifts to the defendant to "produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea." *Id.* If the defendant is successful in this regard, the burden then shifts back to the state "to prove the constitutionality of the plea." *Id.* The supreme court concluded that in order to meet this burden, the state must produce "a 'perfect' transcript of the guilty plea colloquy" and that "[a]nything less than a 'perfect' transcript, such as a guilty plea form or minute entry, will require the trial judge to weigh the evidence submitted by both sides and determine whether the defendant's *Boykin* rights were prejudiced." *Id.*

At the February 19, 2008 hearing, the defendant's trial counsel informed the trial court that his client had requested that he obtain the transcripts of the plea colloquies of the prior convictions, but he had failed to do so. Although acknowledging that he had failed to seek the transcripts, he objected to the trial court proceeding without requiring the state to produce the transcripts. In the hearing, the defendant's counsel again requested "copies of the colloquy to reserve our right with regard to the constitutionality of each and every one of the convictions and [B]oykins that serve the basis of the multiple offender ruling." The trial court denied the request, suggesting that the request was untimely in that the defendant could have requested the documents sooner than he had, but did not do so. The trial court eventually denied the motion to quash, and defense counsel reserved his right to

10

assign error as to "each and every prior multiple bill element." In his brief to this court, the defendant asserts that he should have been provided with the requested transcripts. We need not consider whether the defendant's request was timely, because we find merit in the defendant's argument that the trial court erred in not providing him transcripts of the prior proceedings. However, that error does not reach the level of requiring the reversal of the conviction.

All four sets of court minutes filed by the state as part of the proof of the prior convictions read, word for word, as follows:[8]

> Before accepting his plea of GUILTY, the Court fully advised the defendant of all of his rights and privileges under the law. Questions were propounded by the Court and answers were given by the defendant thereto, *which was recorded and same made a part of these Minutes by reference*. Pursuant to interrogation by the Court and the answers given by the defendant thereto, the Court ruled that there was a factual basis for the plea of GUILTY and the defendant's plea was freely and voluntarily made without anyone having forced or coerced him into doing so and that the defendant understood the nature of the charge against him and his plea of GUILTY was accepted.

(Emphasis added).

Because the referenced colloquies were not filed with the minutes despite being made a part thereof by reference, this court ordered that the record be supplemented with these colloquies, and the same are now a part of the appellate record.

Our review of all transcripts of the prior proceedings wherein the defendant entered his guilty plea reflects that the defendant was clearly advised of his rights pertaining to trial on each offense, as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969), was advised of the penalties associated with each offense, and was provided with all other requirements of law. Based on our review of the

---

[8]The minutes set out above are the minutes of April 14, 1992. The only difference in the other three minute entries is that they are in all caps.

11

transcripts, we find nothing to suggest that his prior pleas were anything other than free and voluntary. Thus, although we do find merit in the defendant's argument that the trial court erred in not providing him transcripts of the proceedings wherein he entered his guilty pleas, we find no merit in his assertion that those transcripts preclude his adjudication as a multiple offender.

## DISPOSITION

For the foregoing reasons, we affirm the defendant's adjudication as a multiple offender in all respects.

**AFFIRMED.**