# State of Vermont v. Thomas Y. Pellerin

[996 A.2d 204]

No. 10-082

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed March 26, 2010

*Robert L. Sand,* Windsor County State's Attorney, White River Junction, for Plaintiff-Appellee.

*Matthew T. Birmingham, III* of *Birmingham & Moore, P.C.,* Ludlow, for Defendant-Appellant.

¶ 1. **Reiber, C.J.** Defendant appeals the district court's January 5, 2010 decision to hold him without bail pursuant to 13 V.S.A. § 7553, which states that a person "charged with an offense punishable by life imprisonment when the evidence of guilt is great may be held without bail." Defendant argues that § 7553 is inapplicable here because the charges brought against him are not in themselves punishable by life imprisonment. The State argues that, because defendant was given notice of the possibility of life imprisonment under Vermont's habitual offender statute, 13 V.S.A.

§ 11, defendant faces charges punishable by life imprisonment. We affirm.

## I.

¶ 2. In this proceeding, the State has brought five criminal charges against defendant: (1) false personation; (2) lewd and lascivious conduct; (3) contributing to the delinquency of a minor; (4) dispensing regulated drugs to a minor; and (5) furnishing alcohol to a minor. Charges (1), (2), and (4) are felonies. Felony false impersonation on its own carries a maximum sentence of ten years. 13 V.S.A. § 2001. Felony lewd and lascivious conduct on its own carries a maximum sentence of five years. 13 V.S.A. § 2601. Felony dispensation of regulated drugs to a minor on its own carries a maximum sentence of five years. 18 V.S.A. § 4237(a). These offenses by themselves do not carry the risk of life imprisonment. Here, however, it is undisputed that defendant has at least three prior felony convictions, including sexual assault, lewd and lascivious conduct with a minor, and attempted statutory rape. As a result, under Vermont's habitual offender statute, defendant faces the possibility of life imprisonment if he is convicted of any of the three felonies with which he is currently charged. See 13 V.S.A. § 11 ("A person who, after having been three times convicted within this state of felonies or attempts to commit felonies, or under the law of any other state, government or country, of crimes which, if committed within this state, would be felonious, commits a felony other than murder within this state, may be sentenced upon conviction of such fourth or subsequent offense to imprisonment up to and including life."). Thus, as the trial court correctly summarized, "[a]lthough none of the offenses [defendant] is currently charged with are, by themselves, punishable by life imprisonment, because of his number of prior felony convictions, 13 V.S.A. § 11 is applicable and any one of the felony charges against him does implicate the prospect of life imprisonment."

¶ 3. The trial court therefore held that, given the applicability of the habitual offender statute, defendant faced several charges punishable by life imprisonment, triggering an analysis under 13 V.S.A. § 7553, rather than the traditional analysis under § 7554. Defendant challenges the trial court's invocation of § 7553, and defendant correctly notes that an analysis under § 7553 is

more likely to lead to the denial of bail than an analysis under § 7554. See *State v. Blackmer*, 160 Vt. 451, 458, 631 A.2d 1134, 1139 (1993) (holding that in § 7553 cases where the evidence of guilt is great "the constitutional right [to bail] does not apply, [and] the presumption is switched so that the norm is incarceration and not release"). Thus, had the trial court erred in analyzing this case under § 7553, we would remand this case for an analysis under § 7554. We conclude, however, that the trial court was correct in its decision to analyze this case under § 7553.

¶ 4. Although various three-justice bail appeal panels of this Court have previously assumed that 13 V.S.A. § 7553 applies to habitual offenders facing the potential for life imprisonment under 13 V.S.A. § 11, see *State v. Hardy*, 2008 VT 119, ¶ 6, 184 Vt. 618, 965 A.2d 478 (mem.); *State v. Gardner*, 167 Vt. 600, 600, 709 A.2d 499, 500 (1998) (mem.), we have never squarely addressed this issue. Thus, in this bail appeal, after a three-justice hearing, we rescheduled the case for consideration by the full Court. Both parties subsequently submitted briefs, and a full Court hearing was held on whether § 7553 applies to defendant in light of the potential for life imprisonment under 13 V.S.A. § 11.

¶ 5. In interpreting statutes, "our goal is to give effect to the intent of the Legislature." *State v. O'Dell*, 2007 VT 34, ¶ 7, 181 Vt. 475, 924 A.2d 87 (quotation omitted). Because the relevant statutory language of § 7553 directly tracks the language from Proposal H, an amendment to Chapter II, § 40 of the Vermont Constitution (the 1982 amendment), "we look primarily to the intent of the voters in adopting the amendment, but we also consider the intent of the Legislature in adopting" the statutory counterpart. *State v. Madison*, 163 Vt. 360, 368, 658 A.2d 536, 541 (1995).[1]

---

[1] The only potentially significant difference between the 1982 amendment and § 7553 is that the 1982 amendment referred to withholding bail from persons "*committed* for offenses punishable by death or life imprisonment, when the evidence of guilt is great," Art. Amend. 49 (1982) (emphasis added), while § 7553 refers to withholding bail from persons "*charged* with an offense punishable by life imprisonment when the evidence of guilt is great" (emphasis added). In the context of when it is appropriate to deny bail, we find no meaningful distinction between the wording of these provisions. Although "committed" sometimes refers to a court order placing someone in a mental-health facility, see Black's Law Dictionary 308 (9th ed. 2009), nothing else in the 1982 amendment suggests that it did not apply to defendants placed in prison rather than in mental-health facilities. Further, even

¶ 6. The Legislature's adoption of § 7553 in 1987 was necessary to give full effect to the 1982 amendment that allowed courts to deny bail for persons facing life imprisonment when the evidence of guilt was great. Before 1982, Chapter II, § 40 created a general presumption that all prisoners were bailable, and the only exception was for those charged with a capital offense. The 1982 amendment changed this by stating that those charged with offenses punishable by life imprisonment could also be held without bail. Then, in 1985, this Court held that the 1982 amendment was not self-executing and that a statutory change was therefore necessary before courts could deny bail under the new constitutional amendment. See *State v. Lambert*, 145 Vt. 315, 487 A.2d 172 (1985). In *Lambert*, a trial court applied the recently adopted constitutional amendment to a defendant charged with second-degree murder. Finding that the defendant faced a maximum penalty of life imprisonment, and that the evidence of guilt was great, the court denied bail. We reversed and remanded because the trial court had based its ruling solely on the constitutional amendment and had ignored the statutory scheme that still applied to bail appeals. *Lambert*, 145 Vt. at 317-18, 487 A.2d at 173. As a result, on remand the trial court was forced to undergo a § 7554 analysis, which at that time presumed that all defendants were bailable unless charged with an offense punishable by death. The adoption of § 7553 fixed this situation by giving trial courts the ability to undergo the analysis envisioned by the amended Chapter II, § 40 of the Vermont Constitution, which explicitly allowed courts to deny bail when an offense was punishable by life imprisonment and the evidence of guilt was great.

¶ 7. Whether looking at a constitutional or a statutory provision, our interpretation begins with the plain language of that provision. See, e.g., *O'Dell*, 2007 VT 34, ¶ 7. If "the plain language is clear and unambiguous," we will enforce it "according to its terms." *Id.* Here, the relevant plain language of § 7553 is that it applies when someone is "charged with an offense punishable by life imprisonment." Quite simply, defendant here is charged with three felonies, each of which — for this defendant — is "an offense punishable

---

if such had been the original intent of the 1982 amendment, the word "committed" has since been removed from Chapter II, § 40, see Art. Amend. 51 (1994), and there can therefore be no doubt that Chapter II, § 40 applies to imprisoned inmates awaiting trial.

by life imprisonment" under Vermont's habitual offender statute. We find no merit in defendant's arguments to the contrary. Defendant contends that § 7553 is inapplicable here because he was never "charged" under Vermont's habitual offender statute, but was merely given notice of the State's intent to invoke it. Similarly, the dissent claims that the "obvious distinction between a charge and a notice infuses, at the very least, a degree of ambiguity into the statutory scheme," and therefore calls for application of the rule of lenity in favor of defendant. *Post*, ¶ 21. We disagree.

■ ■ ¶ 8. Section 7553, like the 1982 constitutional amendment that preceded it, unambiguously refers to all "offense[s] punishable by life imprisonment," and defendant, as a habitual offender, is charged with several such offenses here. Defendant asks this Court to interpret § 7553 as if the statute read "an offense *in itself* punishable by life imprisonment." The statute does not say that. While it is true that defendant was not charged under the habitual offender statute — a statute that acts as a sentencing enhancement, not as a separate criminal violation — this does not change the fact that defendant was charged with several felonies that, for him, are punishable by life imprisonment. The plain language of § 7553 unambiguously applies to defendant, and the rule of lenity is therefore inapplicable. See, e.g., *United States v. Mincoff*, 574 F.3d 1186, 1201-02 (9th Cir. 2009) ("[T]he rule of lenity does not apply because the statute is not ambiguous.").

¶ 9. In addition to the plain language of the 1982 amendment and § 7553, we find several other indicators that the voters who adopted the 1982 amendment and the Legislature that passed § 7553 intended those provisions to apply to defendants facing the possibility of life imprisonment as habitual offenders. First, at the time the voters adopted the 1982 amendment, which set forth the language that was later placed in § 7553, the habitual offender statute had already been law for many decades. Compare 1927, No. 128 (codified as amended at 13 V.S.A. § 11) with Art. Amend. 49 (1982). Thus, the Legislature and the voters who adopted the 1982 amendment were presumably aware that § 7553 would apply to defendants facing life imprisonment as habitual offenders.[2]

---

[2] In one analysis of the 1982 amendment, the author demonstrates that this language was meant to encompass the habitual offender statute. See Note, *Restricting the Right to Bail: Vermont's New Constitutional Bail Amendment*, 8

Second, the Legislature is well aware that the general sentencing enhancement codified in the habitual offender statute has broad applicability, and the Legislature has demonstrated that it knows how to indicate when it does not wish this statute to apply. See 28 V.S.A. § 1533 ("Nothing in this subchapter or in the agreement on detainers shall be construed to require the application of 13 V.S.A. § 11, the habitual criminal law . . . ."). Thus, had the Legislature intended to exempt habitual offenders from the 1982 amendment or § 7553, it could have indicated that it was exempting defendants facing life imprisonment under the habitual offender statute.

■ ¶ 10. Finally, several policy reasons support our conclusion that the voters and the legislators who adopted the 1982 amendment and its statutory counterpart in § 7553 intended that these provisions would apply to defendants facing the possibility of life imprisonment as habitual offenders.[3] In § 7554, the Legislature has stated that bail proceedings should focus on determining conditions that will minimize the risk of flight, § 7554(a)(1), and reasonably protect the public, § 7554(a)(2). Defendants facing life imprisonment as habitual offenders have the same incentives to flee as all other defendants who fall under § 7553. Cf. *State v. Sauve*, 159 Vt. 566, 574, 621 A.2d 1296, 1301 (1993) (noting that the severity of the potential punishment acts as a surrogate for a high risk of flight). As for endangering the public, the Legislature has determined — through passage of 13 V.S.A. § 11 — that habitual offenders are so dangerous and so worthy of punishment as to warrant the same sentence handed out to anyone else who violates any other statutory provision that carries a potential life sentence. We therefore find no basis for exempting from § 7553 those defendants whose potential for life imprisonment arises out

---

Vt. L. Rev. 347, 367 n.158 (1983) (noting that at that time there were eight "offenses listed in Title 13 . . . [that] carry potential sentences of either life imprisonment or death" and specifically listing "[h]abitual criminals — § 11" as one of those offenses).

[3] Contrary to the dissent's claim that this Court should ignore policy considerations, since such considerations are "best addressed to the Legislature," *post*, ¶ 22 n.8, we have frequently noted that policy considerations are a helpful tool in discerning legislative intent. See, e.g., *Dep't of Corr. v. Human Rights Comm'n*, 2006 VT 134, ¶ 7, 181 Vt. 225, 917 A.2d 451 (stating that the paramount goal of statutory interpretation is to effectuate the intent of the Legislature and that this requires examining not only statutory language and legislative history, but also the legislative policies that the statute was designed to implement).

of the habitual offender statute. For these reasons, we conclude that the trial court properly analyzed this case under § 7553.

## II.

¶ 11. Because defendant is charged with an offense punishable by life imprisonment, he may be held without bail if "the evidence of guilt is great." 13 V.S.A. § 7553. "In determining whether the evidence of guilt is great, we consider whether substantial, admissible evidence of guilt, taken in the light most favorable to the State, can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty." *Hardy*, 2008 VT 119, ¶ 10 (citing *State v. Duff*, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989)).

¶ 12. Here, the trial court held that the evidence of guilt was great for two of the felony charges brought against defendant. The State submitted numerous affidavits to the trial court regarding the alleged felony dispensation of regulated drugs to a minor in violation of 18 V.S.A. § 4237(a). A search revealed Vicodin at defendant's home. The trial court thus held that there was "substantial admissible evidence in the State's favor" on this charge. Regarding the lewd and lascivious conduct charge under 13 V.S.A. § 2601, the trial court also found "strong" and "admissible evidence" that defendant was guilty of this charge based on an affidavit describing defendant's acts of lifting the victim's shirt and pulling down the victim's underpants to take photographs of her vagina and buttocks. We agree with the trial court that the evidence of guilt was great in this case and that defendant could therefore be held without bail.

## III.

¶ 13. Finally, we must address whether the trial court properly exercised its discretion to deny bail here. We have previously noted that a trial court "has the discretion to allow bail even where, pursuant to 13 V.S.A. § 7553, a defendant is not entitled to it." *State v. Falzo*, 2009 VT 22, ¶ 6, 185 Vt. 616, 969 A.2d 694 (mem.). That said, the trial court has "extremely broad" discretion in this area, so long as defendant is provided an opportunity to be heard. *Hardy*, 2008 VT 119, ¶ 10 (quotation omitted). Thus, our review of this issue "is strictly limited" to whether there was an abuse of discretion. *State v. Falzo*, 2009 VT 97, ¶ 4, 186 Vt. 596, 981 A.2d 424 (mem.).

¶ 14. We find no abuse of discretion here. In its written decision, the trial court analyzed several of the factors in § 7554 that address whether conditions could be imposed to make defendant bailable. The court noted that defendant has a "long history of sexual offenses" and used his home "to facilitate his proximity to his target victims" of young girls. The court found that defendant appeared to suffer from compulsive and antisocial conduct that endangered the public. The court also noted that "there remains a moderate risk of flight" if defendant were released on bail and noted that defendant had allegedly stated that he "could not go back to jail." For all of these reasons, the court did not believe that the proposed conditions of release "or any other conditions of release would be effective," and the court therefore did not abuse its discretion in denying bail. See *Gardner*, 167 Vt. at 601, 709 A.2d at 500 (holding that in a § 7553 analysis "it is entirely appropriate for the court to deny bail unless it is *fully convinced that the defendant will abide by the conditions* that would be imposed if defendant were released" (quotation omitted)).

*Affirmed.*

¶ 15. **Johnson, J.,** dissenting. Today, the Court holds that a "notice" of a prosecutor's intent to request a sentence enhancement under 13 V.S.A. § 11, introducing a mere possibility that a defendant will face a life sentence following a conviction, is enough to reverse our normal presumption that an accused should remain at liberty pending trial. Such a holding undermines the presumption of innocence for those who stand accused of crimes and greatly expands the category of cases in which the presumption of release is reversed, a category we have explicitly noted should be narrow. For this reason, I respectfully dissent.

¶ 16. Defendant here was charged with five offenses: (1) false personation; (2) lewd and lascivious conduct; (3) dispensing regulated drugs to a minor; (4) contributing to the delinquency of a minor; and (5) furnishing alcohol to a minor. The first three of these offenses are felonies and the latter two are misdemeanors. None of these offenses carry with it a maximum penalty of more than ten years. Defendant was arraigned on May 6, 2009 at which time he was ordered to be held without bail. He has been in

custody since that time.[4] Following a hearing conducted on December 30, 2009, the trial court denied defendant's request for review of his bail. The court noted that "[a]lthough none of the offenses [defendant] is currently charged with are, by themselves, punishable by life imprisonment, because of his number of prior felony convictions, 13 V.S.A. § 11 is applicable; and any one of the felony charges against him does implicate the prospect of life imprisonment."

¶ 17. Having determined that the presumption of incarceration in § 7553 applied, the court noted that the nature of the offenses for which defendant is charged "represents a degree of compulsive conduct and antisocial conduct which necessitates strict control over the Defendant to ensure public safety." The court, however, stated that it did "not believe the risk of flight is strong because of defendant's ties to the community, his limited income and health problems, as well as his long history of generally willing participation in the criminal justice system which ultimately incarcerated him." Instead, the court concluded that "there remains a moderate risk of flight. . . . because of the potential life sentence as well as Defendant's statement to [a detective] that he 'could not go back to jail.' " On appeal, defendant argues that the trial court erred by applying the presumption of incarceration found in 13 V.S.A. § 7553.

¶ 18. The bail provision of the Vermont Constitution provides, in part:

> Excessive bail shall not be exacted for bailable offenses. All persons shall be bailable by sufficient sureties, except as follows: (1) A person accused of an offense punishable by death or life imprisonment may be held without bail when the evidence of guilt is great.

Vt. Const. ch. II, § 40. As this Court emphasized in *State v. Sauve*, Vermont's bail provision is more expansive than its federal counterpart and "explicitly guarantees bail as a matter of right to defendants not charged with offenses punishable by death or life imprisonment." 159 Vt. 566, 571, 621 A.2d 1296, 1299 (1993). Thus, we noted in *Sauve* that "[o]ur constitutional values require that liberty is and must remain the norm and detention prior to trial

---

[4] It is not clear from the record why defendant's bail appeal hearing did not occur until December 30, 2009.

or without trial is the carefully limited exception." *Id.* at 573, 621 A.2d at 1300-01 (quotation omitted). In *State v. Blackmer*, we repeated that denial of bail is appropriate in only "very limited and special circumstances where the State's interest is legitimate and compelling." 160 Vt. 451, 456, 631 A.2d 1134, 1137 (1993). We clarified, however, that "for the small group of serious crimes where the maximum punishment is life imprisonment and where the evidence against defendant is such that there is no constitutional right to bail," the presumption normally attaching to bail determinations "is switched so that the norm is incarceration and not release." *Id.* at 463, 458, 631 A.2d at 1142, 1139.

¶ 19. With these constitutional protections in mind, I cannot agree that the State's "notice" of its intent to request an enhanced sentence under 13 V.S.A. § 11 satisfies the requirement of 13 V.S.A. § 7553 that a defendant be "charged" with an offense subject to a life sentence. See *id.* § 7553 ("A person *charged* with an offense punishable by life imprisonment when the evidence of guilt is great may be held without bail. If the evidence of guilt is not great, the person shall be bailable in accordance with section 7554 of this title." (emphasis added)).

¶ 20. Here, defendant was not "charged" with being a habitual offender, nor could he have been; the habitual offender statute defines no crime.[5] Instead, § 11 is a penalty enhancement statute that is triggered only upon conviction. See *State v. Ingerson*, 2004 VT 36, ¶ 3, 176 Vt. 428, 852 A.2d 567 (concluding that habitual offender statute "does not . . . define a separate or new offense," but instead "provides an enhanced penalty for repeat offenders").[6]

---

[5] 13 V.S.A. § 11 states the following:

> A person who, after having been three times convicted within this state of felonies or attempts to commit felonies, or under the law of any other state, government or country, of crimes which, if committed within this state, would be felonious, commits a felony other than murder within this state, may be sentenced upon conviction of such fourth or subsequent offense to imprisonment up to and including life.

[6] Other courts have similarly concluded that penalty enhancements attached to separately enacted habitual offender statutes do not automatically transform an underlying charge to a life offense for purposes of criminal procedure requirements. See *Smellie v. State*, 720 So. 2d 1131, 1132 (Fla. Dist. Ct. App. 1998) (concluding that "the State's filing of its notice of intent to seek an habitual offender sentence enhancement prior to trial does not serve to increase the number of peremptory challenges a defendant would otherwise be permitted based

¶ 21. The obvious distinction between a charge and a notice infuses, at the very least, a degree of ambiguity into the statutory scheme. Application of the rule of lenity, therefore, requires resolution of this ambiguity in favor of defendant here. See *State v. LaBounty*, 2005 VT 124, ¶ 4, 179 Vt. 199, 892 A.2d 203 ("In interpreting a criminal statute, the rule of lenity requires us to resolve any ambiguity in favor of the defendant."); *State v. Oliver*, 151 Vt. 626, 629, 563 A.2d 1002, 1004 (1989) ("Penal statutes . . . are to be strictly construed in a manner favorable to the accused."); see also *United States v. Singleton*, 182 F.3d 7, 13 n.12 (D.C. Cir. 1999) (citing *Reno v. Koray*, 515 U.S. 50, 64-65 (1995)) (applying rule of lenity to both penalty provisions in criminal statutes as well as bail proceedings). The purpose underlying the rule of lenity is grounded in due process; a citizen must have adequate notice of what sort of conduct may give rise to criminal sanction. Here, the problem is not that defendant had inadequate notice that he faced a possible life sentence for a fourth felony offense. Instead, the problem is that because of the ambiguity in the relationship between § 11 and § 7553, defendant had no way of knowing which bail review statute, and which presumption, would be applied to his case. I would thus interpret § 7553 narrowly, such that the reversal of the presumption is triggered only when a defendant is charged with a crime that by itself carries with it the possibility of life imprisonment.[7]

on the offense charged" and interpreting reference to the "offense charged" in the peremptory challenge law "to pertain to the statutory maximum for the charged offense without the habitual offender enhancement" (quotation omitted)); *State v. Morishige*, 652 P.2d 1119, 1124 (Haw. 1982) (concluding that the defendant was entitled to only three peremptory challenges rather than the twelve required if the offense is punishable by life imprisonment because even though the defendant was subject to a penalty enhancement under a habitual offender provision, the penalty referenced in the peremptory challenge rule referred to the charged offense, not the extended term provision for a multiple offender); *State v. Johnson*, 996 So. 2d 1235, 1238 (La. Ct. App. 2008) (concluding that grand jury indictment, which is required for prosecution of a capital crime or a crime punishable by life imprisonment, "is not required to institute a habitual offender proceeding, even if the effect of the adjudication would be a life sentence"); *People v. Mitchell*, No. 265290, 2006 WL 3077521, at *2 (Mich. Ct. App. Oct. 31, 2006) (per curiam) (concluding that habitual offender statute authorizing a life sentence is not in itself a valid basis for a court's departure from applicable sentencing guidelines).

[7] The majority recites a lengthy history of the constitutional amendments to ch. II, § 40 and the subsequent legislative enactment of § 7553. *Ante*, ¶¶ 5-9. The history behind § 7553, however, indicates only that the voters and then the Legislature

¶ 22. Moreover, even if I were to credit the majority's argument that the relevant charge under § 7553 refers to one of the three felonies that appeared on the information, the relationship between these charges, the notice of the intention to seek the sentencing enhancement, and the possibility of a life sentence is simply too attenuated to trigger reversal of the presumption that a defendant should be released. Indeed, the enhanced penalty provision of the habitual offender statute becomes an option available to the sentencing judge only upon a defendant's *conviction* of a fourth felony and after a jury has found the defendant guilty of the predicate three convictions beyond a reasonable doubt. 13 V.S.A. § 11; *Ingerson*, 2004 VT 36, ¶ 6. The fact that § 11 is triggered only upon conviction is strong evidence that it was not meant to turn every fourth felony charge into a life offense for purposes of reversing the presumption of release with regard to a bail determination — a reversal we noted should be limited to only a "small group of serious crimes." *Blackmer*, 160 Vt. at 463, 631 A.2d at 1142.[8]

¶ 23. The facts here very clearly indicate the importance of where the burden is placed in bail appeal proceedings. Though defendant indeed has a rather lengthy criminal record, evidence was also presented at his bail hearing that defendant is sixty years old, is diabetic and suffers lasting complications from an earlier brain injury; he is unemployed and receives Social Security

intended to limit the right to bail for persons facing life imprisonment when the evidence of guilt was great. This obvious fact does little to resolve the underlying ambiguity as to whether the Legislature intended to unilaterally increase the category of life offenses by grafting the possibility of sentence enhancement under § 11 onto § 7553. It is this ambiguity that necessitates application of the rule of lenity.

[8] The majority argues that the policy reasons in favor of reversing the presumption of release in cases where a defendant is charged with an offense carrying a life sentence — assuring appearance before the court and protecting the public — militate in favor of reversing the presumption of release here. See *ante*, ¶ 10. This type of policy argument, however, is best addressed to the Legislature. As the statutes stand now, there is at least an ambiguity about whether the Legislature intended to graft the penalty enhancement provision of § 11 onto every fourth felony charge, transforming such a charge into an automatic life offense for purposes of bail. Given the ambiguity, it is not the job of this Court to enlarge the scope of life offenses for bail purposes (thus shrinking the protection afforded those charged with crimes under our Constitution) by judicial fiat. Instead, the rule of lenity requires us to construe the statutes in favor of a defendant, such that the ordinary presumption of release applies.

disability; and he has significant family ties to Springfield, Vermont. Indeed, the trial court found that this constellation of facts indicated that there existed only a moderate risk of flight. Had the normal presumption of release applied and the State been shouldered with the burden to make its case that incarceration was necessary to assure the appearance of defendant and to protect the public, it very likely would have been unable to do so. I would, therefore, remand to the trial court for consideration of defendant's bail appeal under 13 V.S.A. § 7554.

¶ 24. I am authorized to state that Justice Skoglund joins in this dissent.