2014 VT 34

**STATE of Vermont v. Ann-Marie WHITEWAY**

[95 A.3d 1004]

No. 14-085

¶ 1. April 7, 2014. Defendant appeals from the trial court's denial of her motion for pretrial home detention. We reverse and remand.

¶ 2. Defendant was arraigned on charges of second-degree murder, 13 V.S.A. § 2301, in late December 2012. She received a weight-of-the-evidence hearing in early January 2013, and the trial court determined to hold her without bail pursuant to 13 V.S.A. § 7553. The court declined to exercise its discretion to release her under § 7554. Defendant did not appeal that decision.

¶ 3. In January 2014, defendant filed this motion for pretrial home detention, pursuant to 13 V.S.A. § 7554b. That statute states, in pertinent part:

(b) Procedure. The status of a defendant who is detained pretrial for more than seven days in a correctional facility for lack of bail may be reviewed by the court to determine whether the defendant is appropriate for home detention. The request for review may be made by either the Department of Corrections or the defendant. . . . In making such a determination, the Court shall consider:

(1) the nature of the offense with which the defendant is charged;

(2) the defendant's prior convictions, history of violence, medical and mental health needs, history of supervision, and risk of flight; and

(3) any risk or undue burden to other persons who reside at the proposed residence or risk to third parties or to public safety that may result from such placement.

13 V.S.A. § 7554b(b).

¶ 4. At the court's request, the Department of Corrections (DOC) conducted an evaluation of her proposed residence and found it suitable for the home detention program, provided the household's locked safe of firearms was removed prior to defendant's arrival. The DOC represented to the court, however, that "assessment of the risks associated with home detention is beyond the scope of [the DOC's] duties and obligations and is a matter that is reserved for the court."

¶ 5. The court heard testimony from defendant's proposed custodian — defendant's former sister-in-law and the owner of the house — and determined that she "is a reliable and suitable person." The court also heard testimony from a DOC employee on the nature of the home detention program, which the court solicited sua sponte. Based on this latter testimony, the court determined that the GPS monitoring bracelet used by the DOC for home detention monitoring might be removed "with a pair of common household scissors," that DOC only checks on the GPS device once daily, and that therefore "it is reasonably likely that the defendant could remove the GPS device from her body and leave the premises in the middle of the night while the proposed custodian is sleeping, and that her absence would not be detected by DOC for up to 36 hours."

¶ 6. The court then examined each factor listed in § 7554b(b). The court found that the first factor, the nature of the offense charged, "weighs heavily against release," as second-degree murder is a serious crime of violence. The court referenced findings from the initial weight-of-the-evidence hearing in determining this factor.

¶ 7. As to the second factor, the court found that defendant "has no significant prior convictions and no history of violence," no unmet medical or mental health needs, and "no history of supervision that supports the conclusion that she presents a risk of flight." Nevertheless, the court found that "because [of] the seriousness of the charge, and the possibility of life imprisonment if convicted, the defendant presents a significant risk of flight."

¶ 8. As to the third factor, the court found that although "the other occupants of the proposed residence . . . [p]resumably . . . do not fear significant danger from the defendant," the court had previously found at the weight-of-the-evidence hearing that "detention is necessary to protect the public, including a third party who is expected to be a witness against the defendant at trial." Additionally, "the program of supervision presently available for home detention involves no surveillance and no method of monitoring the defendant that would promptly alert DOC if defendant removed the GPS unit in the night and absconded from the residence." Based on these findings, the court found that "home detention would create a substantial risk to the public."

¶ 9. Finally, the court found that "the limitations of the electronic monitoring program available under the DOC home detention program are such that . . . home detention will not reasonably assure the appearance of the defendant at court hearings when required."

¶ 10. On appeal, defendant argues that the court abused its discretion by considering the nature of the offense, second-degree murder, in both the first and second of the § 7554b(b) factors. In particular, defendant argues that, in reviewing the first factor, the court looked only at the nature of second-degree murder in the abstract and not at the facts of the case as charged by the State — facts which "suggest[] that this crime was an isolated event inextricably intertwined with a complicated domestic situation and a unique set of circumstances virtually certain never to reoccur."

¶ 11. Defendant also challenges the court's reasoning as to the second factor — that the nature of the offense alone supports a finding that defendant presents a risk of flight — given that the court also found that no other evidence indicates such a risk. Defendant points out that the court found that none of the other § 7554b(b)(2) factors weigh against home detention for defendant. Additionally, defendant argues that the court's finding that the nature of the offense alone suggests that both § 7554b(b)(1) and § 7554b(b)(2) weigh against defendant is an abuse of discretion, because by the court's logic, any defendant charged with a serious crime will be ineligible for home detention. Defendant argues that this logic is contrary to the legislative intent behind § 7554b.

¶ 12. Defendant next challenges the court's finding that § 7554b(b)(3) weighs against home detention, because the court relied exclusively on a combination of findings from the weight-of-the-evidence hearing regarding potential risk to a third-party witness and the court's own conclusion that escape from home detention is possible. Defendant argues that the court did not make findings of its own on the issue of whether defendant poses a threat to third parties and that "[t]here was no evidence to suggest that [defendant] would be likely to violate conditions, remove a GPS unit and abscond in the night."

¶ 13. The State argues that § 7554b must be read together with § 7553, such

that any motion for home detention filed under § 7554b in this case is essentially the same as a motion for bail review. The State therefore analogizes this case to *State v Bushey*, 2009 VT 12, ¶¶ 6-7, 185 Vt. 597, 969 A.2d 119 (mem.), in which we upheld the district court's decision to deny a second motion for bail review where the defendant had not addressed in his second motion any new evidence rebutting the court's original reasons for denying him bail. Of course, § 7554b had not yet been passed at the time of *Bushey*. See 2009, No. 146 (Adj. Sess.), § D4 (codified at 13 V.S.A. § 7554b) (effective July 1, 2010).

¶ 14. In the same vein, the State reads the unreported, single-justice opinion of *State v Merriam*, No. 2012-263, 2012 WL 5974081 (Vt. Sep. 6, 2012) (unpub. mem.), to say that home detention can only be a release option under a motion for bail review, not a program of confinement under the supervision of the DOC. Therefore, the State reasons that the court cannot continue a § 7553 order, which presumes incarceration, under an order of "release" to home detention.

¶ 15. We are thus faced with a question of interpreting § 7554b. Although we have no prior binding decisions on point, we find guidance in *Merriam*, a recent bail appeal decision by Chief Justice Reiber that touches on many of the same themes.

¶ 16. As a preliminary issue, we agree with the analysis in *Merriam* that the term "lack of bail" in § 7554b(b) applies to detainees who have no right to bail under § 7553 and Chapter II, § 40 of the Vermont Constitution, like defendant here, and not just to detainees for whom bail has been set but not met. 2012 WL 5974081, at *2-3 ("The Legislature enacted the home-detention statute to expand, not limit, the use of alternative custody arrangements in a bid to reduce jail occupancy."). This interpretation is supported by the legislative goals stated for § 7554b, which read in part as follows:

"Vermont's incarcerated population is growing at an unsustainable rate and . . . the [DOC] shall strive to reduce [that] number." 2009, No. 146 (Adj. Sess.), § D2. Further, the legislative intent behind the entire bill was to find ways to reduce spending. *Id.* § 1. These statements indicate that § 7554b was meant to apply broadly to the incarcerated population, including defendants held without bail.

¶ 17. Our interpretation is also supported by the DOC's own guidance document labeled "Home Detention — Interim Procedure," effective February 1, 2012, available at http://www.doc.state.vt. us/about/policies/rpd/interim-and-memo/ revised-interim-procedure-home-detention. The first attachment to this document is a sample "Application for Home Detention Program," which explicitly includes an option for defendants held without bail to apply for home detention. It also includes a form allegation that the applicant has been held "for lack of bail for at least seven days," mirroring the language of § 7554b. It does not include any indication that the defendant-applicant must present new evidence to rebut the court's original bail determination, or any other indication that an application for home detention is otherwise a de facto application for bail review. In short, the DOC has interpreted § 7554b in a manner that is consistent with our understanding of the Legislature's intent — as applicable to defendants held without bail, and not as a de facto motion for bail review.

¶ 18. The effect of this determination is to change the nature and standard of review in home detention determinations. We have explained that in cases governed by § 7553 "the presumption is switched so that the norm is incarceration and not release." See *State v. Blackmer*, 160 Vt. 451, 458, 631 A.2d 1134, 1139 (1993). We have characterized the court's discretion to deny bail under § 7553 as "extremely broad" and our review of the decision whether to deny bail as "strictly limited." *State v Pellerin*, 2010 VT 26, ¶ 13, 187 Vt.

482, 996 A.2d 204. Under the home detention statute, the court still retains discretion, see 13 V.S.A. § 7554b(b) (stating that the "Court may order" home detention), but it must be exercised in accordance with certain standards, as discussed below. We think the required factors limit the court's discretion so it is not quite as broad as in cases governed by § 7553. We do think, however, that the *Blackmer* presumption language still applies, so that in essence defendant has the burden to show that home detention should be ordered.

¶ 19. The State is correct that *Merriam* says "the home-detention provision was clearly intended as an alternate condition of release." 2012 WL 5974081, at *1. This was said, however, in the context of determining that the State has standing to appeal a home detention order. The State now seeks to take this statement and argue that, as a condition of release, home detention is not a condition of confinement and therefore qualifies as an alternate form of bail. The State's argument is directly contrary to § 7554b(a) and (c):

> (a) Definition. As used in this section, "home detention" means a program of confinement and supervision that restricts a defendant to a preapproved residence continuously . . . enforced by appropriate means of surveillance and electronic monitoring by the [DOC]. The Court may authorize scheduled absences . . . . Any changes in the schedule shall be solely at the discretion of the [DOC]. A defendant who is on home detention shall remain in the custody of the Commissioner of [the DOC] with conditions set by the court.
>
> . . . .
>
> (c) Failure to comply. The [DOC] may revoke a defendant's home detention status for an un-

authorized absence or failure to comply with any other condition of the Program and shall return the defendant to a correctional facility.

13 V.S.A. § 7554b. These provisions indicate that, although conditions are set by the court, the DOC retains a great deal of discretion and supervisory powers over the home detention program — unlike other defendants who are released on bail or on personal recognizance. See 13 V.S.A. § 7554 (detailing the standard available conditions of release prior to trial, many of which do not involve participation by the DOC unless the court decides to revoke the release). We can determine, therefore, that the Legislature intended to create a sort of hybrid pretrial program, in which a defendant might be "released" from the traditional incarceration but confined in a home, "in the custody of the commissioner" of the DOC.

¶ 20. The State's attempt to draw a distinction between the status of "held without bail" and "release" to home detention is meaningless in this context. Defendant does not seek to have bail imposed; she seeks to be detained in a home instead of in a county facility. As the Legislature has entrusted the decision of whether to place a defendant on home detention to the sole discretion of the trial court, we review that decision for abuse of discretion. See *State v. Barrows*, 172 Vt. 596, 596, 776 A.2d 431, 431 (2001) (mem.).

¶ 21. The trial court's decision in this case constitutes an abuse of discretion. The court did not properly consider the factors it was bound to consider under § 7554b(b) ("[T]he court *shall* consider . . . ."). First, we agree with defendant that the court improperly considered the nature of the offense multiple times against defendant and did not articulate any factors specific to defendant herself that weighed against her in the court's reasoning. The court did not give any

weight to the factors contained in § 7554b(b)(2), which in this case tended to support use of home detention.

¶ 22. Second, we are also concerned that the court grounded its decision on the way that DOC has chosen to discharge its responsibilities under the program. On this point, we emphasize that under the statute home detention places a defendant in the custody of the commissioner of the DOC just as a defendant who is incarcerated is in the commissioner's custody. Although the court must consider the risk to public safety in placing a defendant on home detention, see *id.* § 7554b(b)(3), we do not view this consideration to include second-guessing how the commissioner administers the home detention program. The Legislature has clearly articulated a preference for home detention, where appropriate, over pretrial incarceration lasting longer than seven days. It is the courts' duty to implement that preference in the manner prescribed by the Legislature.

*Reversed and remanded for proceedings not inconsistent with this opinion.*