# ENTRY ORDER

2017 VT 37

SUPREME COURT DOCKET NO. 2017-108

APRIL TERM, 2017

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| | } | |
| Peggy L. Shores | } | DOCKET NO. 235-2-17 Rdcr |

Trial Judge: David R. Fenster

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant appeals the trial court's March 31, 2017 decision to deny bail pursuant to 13 V.S.A. § 7553. We affirm.

¶ 2.     On February 23, 2017, the State charged defendant with second degree murder in violation of 13 V.S.A. § 2301. Defendant was arraigned on that date and pleaded not guilty to the charge. The State moved to hold defendant without bail. The trial court scheduled a weight of evidence hearing to determine whether to grant the State's motion pursuant to 13 V.S.A. § 7553. The evidence presented at the weight of evidence hearing on March 29 included the following.

¶ 3.     On December 11, 2016, while at home, defendant's husband died from a single gunshot wound to his chest. At the time he died, he and defendant were the only people in the home. After the gunshot, defendant called 911 to report the incident. Defendant said that her husband had started walking up the basement stairs with a pistol in his hand when he fell and the gun discharged, shooting him in the chest. She told the operator that she did not think the gun was loaded when she saw him carrying it up the stairs. Later that night, she told the police again that her husband shot himself when he fell walking up the stairs, but that she did know the gun was loaded. She also indicated that her husband's finger was not on or near the trigger when he held the gun.

¶ 4.     After examining the body, the State's medical examiner concluded that there was no fouling or stippling around the wound, which indicated that this was a "distant gunshot wound," and that there was no indication that the decedent had fallen prior to his death. The medical examiner also concluded that the bullet had entered the decedent's left side, about ten inches from the top of his head, and traveled at a downward trajectory to exit his back about six inches lower than the entrance wound.

¶ 5.     The State's forensic examiner analyzed the firearm found next to the decedent's body and the shirt that he was wearing when he died. The forensic examiner determined that the gun and its safety features were functioning properly and that the gun could not be discharged without pulling the trigger. A microscopic examination of the shirt revealed no gunshot residue, leading the examiner to conclude that the shirt was beyond the maximum distance at which the gun would have left residue when it was discharged. After conducting tests on the gun, the examiner concluded that it would have left residue on a target if the gun was fewer than forty-eight inches away from the target. The medical examiner found that the length of the decedent's arm was thirty-five inches, and a police officer determined that the length of the gun was approximately eight inches. The officer therefore concluded that the maximum range the decedent could have shot himself from was about twenty-seven inches, meaning that it would be expected that gunshot residue would have been on his clothes if he had done so.

¶ 6.     The police performed a trajectory reconstruction at defendant's home to determine the possible positions the decedent could have been in when he was shot and the possible angles from which he could have been shot. The police created a wooden representation of the decedent and then attempted to line up the entrance and exit wounds with the spot where the bullet was found lodged in the basement wall. The police concluded from this reconstruction that it was most likely that the decedent was standing either on the basement floor or on the first step when he was shot, less likely that he was on the second, third, or fourth steps, and that it was likely that the gun was fired from the top of the stairs.

¶ 7.     Upon reviewing this evidence, the trial court concluded that defendant's version of the facts did not match the State's physical evidence, that the decedent could not have shot himself, and that he must have been shot by someone else. The court also concluded that there was no evidence that the shooting occurred in the heat of passion or in self-defense. Accordingly, the court concluded that, after taking the evidence in the light most favorable to the State, the State had met its burden of showing that the evidence of defendant's guilt was great and therefore she was eligible to be held without bail.

¶ 8.     After concluding that the evidence of guilt was great, the court offered defendant an opportunity to show that she should be released on bail anyway. The court heard testimony from the decedent's mother, defendant's mother-in-law, who testified that she was willing to be defendant's custodian if defendant was released on bail. The mother-in-law testified that another son and grandson lived with her. She stated that she was not employed and was able to supervise defendant at all times in accordance with defendant's conditions of release. She said that her grandson was currently on probation for a sex offense and that she was responsible for taking him to appointments associated with his probation.

¶ 9.     Next, the decedent's brother, who lives with defendant's mother-in-law, testified that he would help to supervise defendant. On cross examination, the prosecution established that the decedent's brother had previously been convicted of two felonies—one for sexual assault in 1993, and one for violating an abuse prevention order in 2008.

¶ 10.    The defense also called as a witness defendant's brother, who testified that he was willing to be defendant's custodian. He testified that he lives with his wife and daughter, and that defendant would be supervised by at all times by one of the adults, but his wife and daughter did

2

not take the stand to agree to that responsibility. The prosecution called as a witness a detective who testified that defendant's brother had multiple felonies and misdemeanors on his criminal record; the most recent conviction was from 1989. The prosecution also established that the brother's wife had been convicted of DWI once, and his daughter had been convicted of DWI twice.

¶ 11. Defense counsel pointed out that defendant has no record of failing to appear in court or of violating probation conditions. Counsel argued that defendant was a lifelong resident of Vermont and was not at risk of flight. Accordingly, counsel requested the court set bail at $25,000 and impose conditions that included a twenty-four-hour curfew with limited exceptions, a prohibition on the possession of firearms, and restrictions on alcohol.

¶ 12. The State called as a witness a detective who testified that the police found thirteen one-gallon bags of marijuana in defendant's home. The State also called defendant's son-in-law as a witness, who testified that he had borrowed large sums of cash from the decedent several times, and that the decedent apparently kept large amount of cash on hand. The State requested that the court hold defendant without bail.

¶ 13. In its written decision, the trial court determined that defendant should be held without bail. The court first expressed concerns with defendant's proposed custodians. It noted that defendant's mother-in-law was already supervising her grandson who was on probation for a sex offense. The State submitted an affidavit after the weight of evidence hearing from a police officer who stated that the mother-in-law's grandson would have to move out of the house if defendant was allowed to live there. The court was also concerned about defendant's brother's criminal history, as well as the criminal history of the two other adults living with the brother. Although defendant in argument identified other members of her or her husband's family who would also be willing to supervise defendant, the trial court noted that defendant did not offer any specific testimony from those other individuals so the court could not consider them as individuals to supervise defendant.

¶ 14. Next, the court considered the factors listed in 13 V.S.A. § 7554 to determine whether they weighed in favor of releasing defendant. The court emphasized the strength of the State's case against defendant, and concluded that the nature and circumstances of the offense, and the weight of the evidence of guilt, weighed heavily against defendant. It noted that defendant is a lifelong resident of Vermont and has multiple family ties to the area, which weighed in her favor. The court mentioned that defendant provided very little information about her job as a housekeeper, which did not favor either releasing or holding her without bail. The court also noted that she had some assets in Vermont and had several convictions on her record, but no record of failing to appear or violating probation. It explained that defendant had no history of violence but stated that, "given the magnitude of this act of violence, the court cannot conclude that [d]efendant's character [or] mental condition weigh in her favor." Weighing these factors, the court concluded that defendant was not bailable and ordered her held without bail. Defendant appealed.

¶ 15. Defendant argues that the trial court erred in three respects. First, defendant contends that the State did not meet its burden in proving that the evidence of guilt was great because there were significant flaws in the State's evidence. Second, defendant argues that the

trial court's findings regarding the 13 V.S.A. § 7554 factors do not support its conclusion that defendant should be held without bail. Lastly, defendant argues that the trial court erred in failing to address whether conditions of release would have been sufficient to prevent flight and protect the public.

¶ 16. Under 13 V.S.A. § 7553, a trial court may hold a defendant without bail if the defendant is charged with a crime punishable by life imprisonment and the evidence of guilt is great. "When reviewing a trial court's determination of whether or not the evidence of guilt is great, we consider whether substantial, admissible evidence of guilt, taken in the light most favorable to the State, can fairly and reasonably convince a fact-finder beyond a reasonable doubt that [the] defendant is guilty." State v. Brillon, 2010 VT 48, ¶ 7, 188 Vt. 537, 996 A.2d 1187 (mem.) (quotation omitted). If the State meets this burden, a presumption in favor of incarceration arises, but "the court has discretion to decide whether to hold the defendant without bail or, instead, to impose bail and conditions of release." State v. Rondeau, 2017 VT 21, ¶ 7, __ Vt. __, __ A.3d__ (mem.)

¶ 17. We first address defendant's argument that the trial court erred in finding that evidence of guilt was great. Defendant argues that, although the trial court must consider the evidence in the light most favorable to the State, this standard does not allow the court to essentially disregard significant flaws in that evidence. We conclude that the trial court's weight of evidence determination was supported by the proceedings below. See State v. Avgoustov, 2006 VT 90, ¶ 4, 180 Vt. 595, 907 A.2d 1185 (mem.) ("We review the trial court's decision to determine whether it is supported by the proceedings.").

¶ 18. The State presented numerous affidavits regarding physical evidence found at defendant's home. The State's medical and forensic evidence suggested that the decedent was shot from a distance greater than the length of his own arm, so defendant's explanation of what happened was inconsistent with the physical evidence. This conclusion was supported by medical testimony relating to the nature of the gunshot wound and it was further supported by forensic testing on the gun and of the area of the decedent's shirt where the bullet entered the decedent's body. The trajectory reconstruction supported the hypothesis that the decedent was shot by somebody standing at the top of the stairs. Defendant was the only other person in her home the night the decedent was shot. Taken altogether, and taken in the light most favorable to the State, this evidence could "reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty." State v. Bullock, 2017 VT 7, ¶ 8, __ Vt. __, __ A.3d __ (mem.) (quotation omitted).

¶ 19. We reject defendant's argument that the trial court failed to properly consider the evidence before it. The trial court's role during a bail hearing is not to adjudicate the merits of the case or to "litigat[e] [the] defendant's guilt prior to trial." State v. Breer, 2014 VT 132, ¶ 8, 198 Vt. 629, 112 A.3d 1273 (mem.); see also State v. Turnbaugh, 174 Vt. 532, 534, 811 A.2d 662, 665 (2002) (mem.) ("[I]t is not the role of the court in a bail review hearing to judge the State's case . . . . Rather, the court need only determine if the State's evidence is sufficient to sustain a verdict of guilty, not whether the jury will indeed be persuaded to render same."). Nonetheless, a weight of evidence determination necessarily involves considering the strength and veracity of the State's evidence. We recognize the flaws that defense counsel pointed out in the State's case, and we consider those defects when deciding the weight of the evidence. In this case, the flaws in the State's evidence do not prevent the State from carrying its burden of establishing a prima facie

case of guilt. The trial court's findings were supported by the evidence, and its findings support the conclusion that the evidence of guilt is great. See Breer, 2014 VT 132, ¶ 9.

¶ 20. We address together defendant's arguments concerning the trial court's discretionary decision to hold her without bail. Once the trial court concludes that there is a presumption of incarceration, the court has "extremely broad" discretion in determining whether to hold defendant without bail or to release defendant with conditions, "but its decision cannot be arbitrary." Avgoustov, 2006 VT 90, ¶ 2. We review this decision for abuse of discretion. State v. Pellerin, 2010 VT 26, ¶ 13, 187 Vt. 482, 996 A.2d 204.

¶ 21. Defendant contends that the court's findings regarding the 13 V.S.A. § 7554 factors do not support a conclusion that she presented a risk of flight or a risk to public safety, that the court did not provide any reasoning for why she was not bailable, and that the court did not consider whether conditions of release would be adequate. We conclude that the trial court did not abuse its discretion in deciding to hold defendant without bail.

¶ 22. The touchstones for evaluating the trial court's exercise of discretion under § 7554 are the State's interests in mitigating risk of flight and risk of danger to the public. See, e.g., Rondeau, 2017 VT 21, ¶ 13 (holding no abuse of discretion in decision to deny bail when none of defendant's family members offered to supervise him on release, he was "mostly unemployed," family members testified to his dishonest character, and he had threatened to kill his victim); Pellerin, 2010 VT 26, ¶ 14 (holding no abuse of discretion when defendant had "long history of sexual offenses," had used his home to target potential victims, and demonstrated "compulsive and antisocial conduct"); Brillon, 2010 VT 48, ¶ 11 (holding no abuse of discretion when defendant had "long history of disobeying court orders," which "warranted serious doubt about whether defendant would obey conditions of release and, by extension, whether the public would be adequately protected"); Avgoustov, 2006 VT 90, ¶ 7 (holding no abuse of discretion when defendant lacked extensive ties to community and was not employed). In fact, the presumption of holding without bail arises exactly because this Court treats a potential sentence of life imprisonment as a proxy for flight risk or risk to public safety. State v. Blackmer, 160 Vt. 451, 460, 462, 631 A.2d 1134, 1140-41 (1993). Consequently, in a § 7553 case, where the evidence of guilt is great, a trial court's decision to hold a defendant without bail is not arbitrary as long as it reasonably serves the interests of mitigating the risks of flight and danger to the public.

¶ 23. The court's decision in this case was not arbitrary. Defendant argues that she is being held without bail simply based on the nature of the charge and the weight of evidence, but this is not how we read the trial court's decision. Once the court determined that the evidence of guilt was great, it provided defendant with the opportunity to be heard on the issue of bail. See Pellerin, 2010 VT 26, ¶ 13 (reasoning that trial court has broad discretion in deciding whether to hold without bail "so long as defendant is provided an opportunity to be heard"). In its written decision, the court considered the evidence that either favored or disfavored defendant's release on bail, including evidence relating to the family members with whom defendant proposed to live. In that hearing defendant primarily focused on the testimony of potential custodians, and the court found the two proffered custodians unsuitable. The court's finding on that point was not an abuse of discretion.

5

¶ 24.    The existence of an adequate custodian is relevant to the determination of whether the defendant should be released under § 7553 because it relates to a defendant's likelihood of complying with court orders and conforming to the law.  See Rondeau, 2017 VT 21, ¶ 13 (holding that trial court did not abuse discretion when holding without bail partly because defendant did not propose a custodian to supervise him on release).  The court's finding that there was no proper custodian was supported by the record.  Defendant's mother-in-law was already supervising a family member who was on probation for a sex offense and whose probation may have been impacted if defendant moved in.  The mother-in-law's son had a criminal record, including one conviction for violating a court order.  Defendant's brother and his adult family members had criminal records, and although the brother testified that somebody would be available to supervise defendant at all times, the other adults living in the home did not testify.  The trial court had the opportunity to directly observe these proposed custodians when they testified in court, as part of its assessment of their suitability.  Based on its findings, the court did not abuse its discretion in concluding that releasing defendant on bail with a condition that she stay with one of the proposed custodians would not sufficiently limit flight risk and risk to public safety.

¶ 25.    We conclude that the court's analysis of this factor supports its determination that defendant should be held without bail.[*]

Affirmed.

BY THE COURT:

_____
Beth Robinson, Associate Justice

☒ Publish

_____
Harold E. Eaton, Jr., Associate Justice

☐ Do Not Publish

_____
Karen R. Carroll, Associate Justice

---

[*] We focus on the analysis of the proposed custodians because it was the focus of the trial court's discussion.  We do not mean to suggest that this is the only factor that supports the court's determination, or that with a suitable custodian defendant is entitled to bail as a matter of law.

6