NOTICE: This entry order is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

## ENTRY ORDER

2026 VT 16

SUPREME COURT CASE NO. 26-AP-121

APRIL TERM, 2026

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Rutland Unit, |
| | } | Criminal Division |
| | } | |
| Courtney Samplatsky | } | CASE NO. 22-CR-05110 |
| | } | |
| | | Trial Judge: Cortland Corsones |

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant Courtney Samplatsky appeals the trial court's decision denying her motion to review bail. We affirm.

¶ 2.     The record reveals the following. Defendant was charged with second-degree murder and aggravated assault with a weapon in June 2022. A second-degree murder conviction carries a maximum sentence of life imprisonment. 13 V.S.A. § 2303(a)(2). The State moved for defendant to be held without bail under 13 V.S.A. § 7553, which provides that a person charged with an offense punishable by life imprisonment may be held without bail when the evidence of guilt is great. At her arraignment on July 7, 2022, defendant pleaded not guilty and was held without bail. The court held a weight-of-the-evidence hearing on July 12, 2022. At that hearing, the trial court concluded that the weight of the evidence was great as to defendant's second-degree murder charge. The court then offered defendant the opportunity to prove that she was bailable. Defendant declined, instead electing to reserve this opportunity for a later date when she could have a pretrial release plan in place.

¶ 3.     In March 2026, defendant moved for review of bail pursuant to 13 V.S.A. §§ 7553 and 7554. On March 26, 2026, the trial court held a bail-review hearing. The court considered the factors set forth in 13 V.S.A. § 7554(b) in determining whether to release defendant on bail, including "the seriousness of the offense charged and the nature and circumstances of the offense charged"; "the number [of] offenses with which the accused is charged"; "the weight of the evidence against the accused"; "the accused's character and mental condition"; "family ties"; and "the accused's . . . length of residence in the community." The parties agreed that the trial court

could consider evidence from the July 2022 weight-of-the-evidence hearing in weighing these factors. The court found that this evidence fairly showed that decedent sold heroin and cocaine from his residence in Rutland, Vermont. Defendant was visiting decedent's house with "Mike,"[*] to buy drugs. Mike and decedent got into an argument in decedent's bedroom and defendant, who was standing in the doorway to the bedroom, shot decedent multiple times. Upon leaving the house, defendant pointed her gun at two individuals who were also in the house and told them to stay put. The medical examiner found that decedent had been shot twice in the head, once in his chest, and once in his arm.

¶ 4.     At the bail-review hearing, defendant presented her pretrial release plan, which she created with the help of Therapeutic Works, Inc. As part of this release plan, defendant would reside with her mother at her mother's house, which is free from alcohol, drugs, and firearms. Her mother would consistently supervise defendant and would report any violations of conditions of release to law enforcement. Defendant would have her own bedroom and bathroom. Defendant would remotely receive intensive trauma-informed treatment from the Center for Trauma Recovery. Therapeutic Works, Inc., would monitor her compliance with the plan and assist with transportation to appointments and court hearings. Hope Love, Chief Operations Officer and psychotherapist with Therapeutic Works, Inc., and defendant's mother both testified regarding defendant's pretrial release plan.

¶ 5.     In addition to discussing defendant's release plan, Ms. Love testified that defendant had engaged in therapy during her incarceration and had made significant progress. Ms. Love testified that defendant had obtained her high school diploma and was taking college courses. She also testified that defendant was no longer abusing substances and was serving as a mentor to other incarcerated women.

¶ 6.     In a written decision, the trial court denied defendant's motion to review bail, expressing concern about defendant's risk to public safety. The court explained that defendant has over a twenty-year history of substance-abuse and mental-health issues, which "played a significant role in this extremely serious and violent offense." The court noted that although defendant had improved within the "forced" sobriety environment of the correctional facility, the court did not think she could sufficiently treat her substance-abuse and mental-health issues outside of this setting to prevent her from relapsing. The court highlighted that defendant would be released into an "unsecure residence" and "into the same community where she has not been successful in the past." The court concluded that defendant could therefore become "a very real risk to public safety."

¶ 7.     The court also noted that defendant's release plan did not reasonably prevent defendant's potential flight to avoid prosecution. The court highlighted testimony from Ms. Love who explained that defendant has complex post-traumatic stress disorder (PTSD), and people who experience this are "always in a fight, flight, or freeze response." The trial court explained that given that defendant "is facing a very serious charge and due to her complex PTSD, one of her reactions to stressful situations is 'flight.' " Defendant appeals.

---

* It was explained at the bail-review hearing that "Mike" was defendant's husband.

¶ 8.    Under 13 V.S.A. § 7553, a trial court may hold a defendant without bail if that person is (1) "charged with an offense punishable by life imprisonment," and (2) "the evidence of guilt is great."  See also Vt. Const. ch. II, § 40 ("A person accused of an offense punishable by . . . life imprisonment may be held without bail when the evidence of guilt is great.").  Where these conditions are met, a "presumption against release arises, and the burden shifts to the defendant to present evidence that persuades the court to set bail or conditions of release."  State v. Vialet, 2021 VT 62, ¶ 3, 215 Vt. 648, 261 A.3d 642 (mem.); see also State v. Green, 2024 VT 37, ¶ 4, 219 Vt. 646, 327 A.3d 769 (mem.) ("This presumption against release arises because we consider a potential sentence of life imprisonment as a proxy for flight risk or risk to public safety." (quotation omitted)).

¶ 9.    We review a trial court's decision to deny bail for abuse of discretion.  State v. Buell, 2025 VT 57, ¶ 11, __Vt. __, 350 A.3d 341 (mem.).  The trial court has wide latitude to decide whether to hold a defendant without bail or release them with conditions, but this decision must not be arbitrary.  State v. Shores, 2017 VT 37, ¶ 20, 204 Vt. 630, 168 A.3d 471 (mem.).  In making this determination, the trial court may use the factors in § 7554(b) to determine if conditions of release can "mitigate the risk of flight and ensure the safety of the public," which are the two "touchstones" for evaluating whether to release a defendant with conditions.  State v. Waterman, 2022 VT 1, ¶ 20, 216 Vt. 584, 273 A.3d 634 (mem.); Shores, 2017 VT 37, ¶ 22.  As long as the court's decision to hold defendant without bail "reasonably serves the [State's] interests of mitigating" these risks, then the court's decision is not arbitrary.  Shores, 2017 VT 37, ¶ 22.  Furthermore, "[w]hen the need for conditions is viewed in light of the possible punishment of life imprisonment, it is entirely appropriate for the court to deny bail unless it is fully convinced that the defendant will abide by the conditions that would be imposed if defendant were released."  State v. Blackmer, 160 Vt. 451, 459, 631 A.2d 1134, 1139 (1993).

¶ 10.    Defendant makes two arguments on appeal.  We begin with the first.  Defendant argues that the trial court misapplied the § 7553 presumption against release when a person is charged with an offense punishable by life in prison and the evidence of guilt is great.  Defendant asserts that the trial court unconstitutionally required defendant to guarantee perfect safety when the standard under § 7554 is whether conditions of release can reasonably manage risk.

¶ 11.    We disagree that the trial court used an incorrect standard when evaluating whether to set conditions of release based on defendant's release plan.  The trial court did not require defendant to guarantee perfect safety through her pretrial release plan, but instead looked at numerous factors to determine that defendant's release plan did not reasonably mitigate the risk to public safety.  The court acknowledged that defendant had made progress in addressing her mental-health and substance-abuse issues but concluded that the "forced" setting at the correctional institution did not mean she would have the same success once released—especially since she would be in "the same community where she has not been successful in the past."  The trial court also looked at the violent nature of the crime, noting that defendant's substance abuse played a "significant role" in the offense.  The trial court did not abuse its discretion when denying defendant's motion to review bail after determining that her release plan would not "reasonably prevent defendant from relapsing and becoming a very real risk to public safety."  See Shores, 2017 VT 37, ¶ 22 (explaining that touchstone for determining whether to release defendant with conditions is whether conditions would "reasonably serve[] the [State's] interests of mitigating" risk to public safety).  In this case, there was a presumption against release, and defendant did not

3

meet her burden of showing that she is not a risk to public safety, such that the court should set conditions of release. See Vialet, 2021 VT 62, ¶ 3 (where defendant is charged with offense punishable by life imprisonment and evidence of guilt is great, "presumption against release arises, and the burden shifts to the defendant to present evidence that persuades the court to set bail or conditions of release").

¶ 12.     Second, Defendant asserts that the trial court erred by coming to its own conclusion, not based on the evidence, that defendant is more likely to flee prosecution because of her complex PTSD. Defendant asserts that Ms. Love's testimony was a general statement about how people react to stressful situations when they have complex PTSD and not that defendant's reaction would always be "flight." Because we conclude that the trial court acted within its discretion in denying defendant's motion to review bail, as defendant's release plan did not adequately address risks to public safety, we decline to consider defendant's second argument. See Waterman, 2022 VT 1, ¶ 20 (explaining that trial court evaluates if conditions of release can mitigate both flight risk and risk to public safety).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Christina E. Nolan, Associate Justice


_____
Michael P. Drescher, Associate Justice