NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 18

No. 2019-037

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Bennington Unit, |
| | Criminal Division |
| | |
| Bernard D. Rougeau | February Term, 2019 |

William D. Cohen, J.

Robert F. Plunkett, Bennington County Deputy State's Attorney, Bennington, for
  Plaintiff-Appellee.

Matthew Valerio, Defender General, Montpelier, Katherine Lamson, Bennington County
  Public Defender, and Richard P. Burgoon, Jr., Law Clerk (On the Brief), Bennington, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **CARROLL, J.** Defendant appeals the trial court's requirement that he post $100,000 cash or surety bond to mitigate any potential risk that he flee from prosecution. See 13 V.S.A. § 7554(a)(1)(E). He is currently held in custody for failure to post bail while he awaits trial on three counts: aggravated assault on a law enforcement officer by threatening with a deadly weapon (13 V.S.A. §§ 1024(a)(5), 1028(a)(1)), reckless endangerment (13 V.S.A. § 1025), and interference with access to emergency services (13 V.S.A. § 1031). He challenges the imposition of bail and the amount of bail imposed. We affirm.

¶ 2. The following facts are based on the affidavit of probable cause and representations made by counsel during the bail-review hearing.[1] In October 2018, defendant's

---

[1] At the bail-review hearing, neither party offered testimony or any other type of evidence.

sister telephoned the state police to report that defendant was suicidal and had cut himself. Defendant lived at his mother's house. Police dispatched officers to that location, and, while those officers were en route, other officers telephoned the house. Defendant's mother answered the call and confirmed that defendant was inside the residence, he was intoxicated, and, indeed, he had cut himself. During the call, defendant was heard yelling in the background and he purportedly disconnected the call before it had finished. Minutes after the call was cut off, dispatch called the home back. Defendant's mother answered, and she reported that defendant had fled from the residence carrying a long-gun firearm. Before leaving he said, "I'm not going with them they are going to kill me."

¶ 3. The police arrived at the home and an officer located defendant outside, emerging from the surrounding woods. He was armed. According to the affidavit of probable cause, the officer warned him to drop the weapon, yet defendant advanced toward the officer, still holding the gun. Then defendant raised the firearm. In that moment, according to the affidavit, the officer shot defendant in the abdomen.

¶ 4. Defendant was taken into custody and airlifted to Albany Medical Center to treat his wounds. In November 2018, he waived extradition from New York and was arraigned in Vermont on the above-three counts.

¶ 5. At the arraignment, defense counsel argued that defendant did not pose a risk of flight from prosecution, and if he did then a low amount of bail should be imposed. Counsel explained that defendant was a lifelong resident of the town of Bennington; he was a thirteen-year employee of Kaman Composites in Bennington, where he was paid $16.75 per hour; "[h]is entire family. . . includ[ing] his daughter, his mother, and his sister" live in the Bennington area; and he had waived extradition from New York. The State argued that defendant's charges involved a "mental health break," threats of self-harm, and a firearm. Moreover, "an individual who flees into the woods with a firearm, indicating to his mother that he wants to be shot by the police, poses a significant risk of flight." The State also recounted defendant's criminal history,

2

which involved felony convictions for arson, DUI III, multiple contempt-of-court convictions, and a failure to appear. The court ruled that defendant posed a risk of flight and set bail at $100,000 cash or surety bond based on defendant's criminal record, the seriousness of the offense, and the nature and circumstances of the offense.

¶ 6.    Defendant moved for a bail-review hearing. At the hearing, defense counsel argued that defendant posed a greater risk to himself in this case than to anyone else, unlike other possible circumstances involving the same charges, and currently there was not great evidence of defendant's guilt.[2] Counsel reiterated defendant's strong personal and family ties to the community and explained that his good character was demonstrated by his history of employment and his loving relationship with his daughter. Counsel explained that if defendant were released, he would reside at his residence alone because his mother had moved out. Also, counsel noted that defendant's health depends upon the maintenance of a colostomy bag and if he were to flee from prosecution after being released, he would be putting himself in "grave danger." While noting that defendant has prior convictions for violating conditions of release and one failure-to-appear charge on his criminal history record, counsel explained that defendant's record also showed that he had successfully completed probation and that the failure-to-appear charge was an isolated incident, not an intentional attempt to evade prosecution.

¶ 7.    Defense counsel represented to the court that neither defendant nor his family could afford to post $100,000 cash or surety bond and requested that the court "rely on the public-defender application" when assessing defendant's financial means. The court stated that in its view, it is "a bad policy" to use this form for any purpose other than deciding whether an individual qualifies for a public defender. Defense counsel then represented to the court that defendant has no savings, and that he had lost his job in the aftermath of the events giving rise to this case.

---

[2]    Defense counsel acknowledged that the extent of the inculpatory evidence could change once the State produced a video recording of the incident in discovery, which it had not done at the time of the bail-review hearing.

¶ 8.    The State argued that defendant's alleged interference with access to emergency services, his statement that he believed that the police were going to kill him, and his assertion that he wanted the police to shoot him are acts suggesting that defendant posed a risk of flight. The State conceded that a defendant's "ability to pay" should be analyzed. The State also argued that defendant has a lengthy criminal record, which includes two felony convictions, six misdemeanor convictions—four of which are violations of court orders—and the failure-to-appear conviction. And, according to the State, although defendant was suicidal during this offense, he also raised a loaded gun at an officer.

¶ 9.    The court denied defendant's request to reduce or eliminate bail. It explained that the circumstances of the offense involved the police's seeking to locate defendant at his home to ensure his well-being; defendant was not there, but he then emerged from the surrounding woods holding a long gun. When requested by police to drop the weapon, he continued to walk forward and raised the weapon. The court also found that defendant's mental condition at the time of the incident was unstable and could not be relied upon. Additionally, the defendant had prior convictions for noncompliance with court orders. Last, defendant had a failure-to-appear conviction, though the court noted that it was fifteen years old.

¶ 10.    The court assessed defendant's financial means, including that his mother owns a home in Pownal. Rather than consider the information in the public-defender application, the court stated it would take defense counsel's representation that defendant is "not a person of means." The court also acknowledged that defendant has strong familial ties to Bennington County and consistent employment despite having recently been fired. These factors mitigate the risk of flight from prosecution to a degree. However, the court concluded that despite several factors suggesting that little or no bail should be imposed—including defendant's lack of funds—the "overriding issue in this case is the seriousness of the offense and the facts and circumstances of the offense." These factors create a risk of flight from prosecution. The court therefore denied defendant's motion to remove or reduce bail.

4

¶ 11. Defendant is unable to post bail and is currently in pretrial custody. He appealed the trial court's bail determination and makes four arguments. First, that he does not present a risk of flight from prosecution, and therefore no bail should be imposed on him. Second, that the amount of bail set by the trial court constituted an abuse of discretion. Third, that the trial court abused and withheld its discretion by refusing to consider proof of his limited financial means in the form of the public-defender application. Fourth, that the court should interpret the amended-pretrial-release statute to prohibit the setting of bail above the maximum fines for an accused's charges.

¶ 12. We reject these arguments with one exception: under the circumstances of this case, the trial court should have considered—although it need not accept the veracity of or rely upon the information contained within—the public-defender application in its analysis. However, because the court here accepted counsel's representation that defendant's financial means were limited, the refusal to consider the public-defender application was harmless. We therefore affirm.

¶ 13. The Legislature recently amended the statute governing pretrial detention and release under which courts may impose bail. 13 V.S.A. § 7554; 2017, No. 164 (Adj. Sess.), § 3 (eff. July 1, 2018). Under the old statute, when deciding whether to impose bail, courts were to consider whether a defendant posed a risk of not appearing in court. 13 V.S.A. § 7554 (2017). This consideration has been excised from the statute; now a defendant must be released before trial—either on his or her own recognizance or with the tendering of an unsecured appearance bond—unless pretrial release "will not reasonably mitigate the risk of flight from prosecution." 13 V.S.A. § 7554. "Flight from prosecution" is defined as "any action or behavior undertaken by a person charged with a criminal offense to avoid court proceedings." Id. § 7576(9). In assessing whether there are conditions of pretrial release that would reasonably mitigate the risk that a defendant would attempt to evade court proceedings—or whether something more

restrictive such as bail is appropriate to mitigate that risk[3]—courts must consider "the seriousness of the offense charged and the number of offenses with which the [defendant] is charged." 13 V.S.A. § 7554(a)(1). Courts also must "take into account" the following factors "on the basis of available information":

> [T]he nature and circumstances of the offense charged; the weight of the evidence against the accused; the accused's employment; financial resources, including the accused's ability to post bail; the accused's character and mental condition; the accused's length of residence in the community; and the accused's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

Id. § 7554(b)(1). The revised bail statute requires courts to specifically consider the accused's "financial means" when imposing cash bail or surety bond as a condition of release. Id. § 7554(a)(1)(D)-(E).[4]

¶ 14. Anyone detained because of the inability to meet the conditions of release—including an inability to post bail—is entitled to have the conditions reviewed by a judge, and, if the conditions are not amended as requested, the judge must "set forth . . . a reasonable basis for continuing the conditions imposed." Id. § 7554(d)(1). We must affirm an order imposing bail

---

[3] I respectfully disagree with my colleague Justice Skoglund's dissent for several reasons. Perhaps most importantly, this dissent, by emphasizing the definition of "flight from prosecution" in the revised statute, incorrectly construes the law to require past "specific behaviors" or a past "action" by an accused "specifically designed to avoid prosecution." Post, ¶¶ 23-24. Contrary to this interpretation, the statute requires courts to predict whether the risk that a defendant might engage in future behaviors or actions to evade court proceedings can be "reasonably mitigate[d]" by conditions other than bail. See 13 V.S.A. § 7554(a)(1). An accused's prior commission of an act to flee from prosecution is just one of several factors that a court must consider when deciding whether a defendant poses such a risk. See Id. § 7554(b)(1) (requiring courts to consider, among other factors, an "accused's record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings").

[4] The prior version of the bail statute only required consideration of an accused's "financial resources," with no reference to ability to post bail, when imposing a condition of release. 2017, No. 164 (Adj. Sess.), § 3. The new statute not only requires consideration of an "accused's ability to post bail," but, as noted above, it also separately requires "consideration of defendant's financial means" before a court may impose the execution of a surety bond as a condition of release. 13 V.S.A. § 7554(a)(1)(D)-(E).

6

"if it is supported by the proceedings below." Id. § 7556(b). "We review the trial court's bail decision for abuse of discretion." State v. Pratt, 2017 VT 9, ¶ 20, 204 Vt. 282, 166 A.3d 600.

¶ 15. We conclude that the trial court did not abuse its discretion in determining that the pretrial release of defendant without the imposition of bail would not reasonably mitigate the risk that he might flee from prosecution.[5] The trial court explained that the seriousness of the offenses charged and the nature and circumstances giving rise to the charges "overrid[e]" the other factors that would militate toward a lesser amount of bail or no bail. The court also found that defendant's mental condition was unstable and that he was unreliable at the time of the incident. And the court noted that defendant had prior convictions for noncompliance with court orders and a conviction for failure to appear, though it was fifteen years old. The court's reliance on these factors as a "reasonable basis" for continuing the imposition of $100,000 cash or surety bond is supported by the record below. See 13 V.S.A. §§ 7554(d)(1), 7556(b).

¶ 16. According to the affidavit of probable cause, defendant fled from his home, after engaging in self-harm, while the police were on their way to his home. He effectively stated that he would not go with the police and that he believed the police would kill him when they arrived—though they had been called to perform a wellness check on him. These circumstances of the charged offense support the trial court's finding that defendant's mental condition was "unstable" and that he could not be "relied upon." And it is not an abuse of discretion to infer, as

---

[5] Defendant also argues that the court abused its discretion in imposing bail at $100,000 because this amount of bail is "in reality a hold without [bail]." This argument, however, relies on defendant's assertion that he poses no risk of flight from prosecution. Indeed, defendant did not quarrel with the bail figure itself when he argued that, "[o]n these facts, no bail should have been imposed—again, there were no facts suggesting that Mr. Rougeau posed any risk of flight from prosecution." Because we hold that the trial court's conclusion to the contrary was not an abuse of discretion, we do not address this argument further. Justice Robinson argues in dissent that the bail-review court was required to explicitly conclude that the amount of bail imposed is the lowest amount necessary to reasonably mitigate the risk that defendant might flee from prosecution. Post, ¶ 48. However, the law does not require the court to make such an explicit finding here, where defendant has only argued that he poses no risk of flight, and he has not also argued that a lesser amount of bail would reasonably mitigate his risk of flight. See 13 V.S.A. § 7554(d)(1) (requiring bail-review court to amend conditions "as requested" by defendant or to "set forth . . . a reasonable basis for continuing the conditions").

7

the trial court appears to have done, that an accused who is mentally unstable and whose behavior—in the context of a police intervention—is unreliable, poses a risk of flight from prosecution that would not be mitigated by pretrial release. In concluding that defendant posed such a risk, the court also—to a lesser extent—relied on defendant's prior history of not complying with court orders and his conviction for failure to appear. These factors must be considered. Id. § 7554(b)(1). They support the conclusion that defendant poses a risk of flight from prosecution that would not be mitigated by pretrial release if the court believed, as it apparently did, that persons who fail to comply with court orders or who do not appear at scheduled court hearings are more likely to flee from prosecution while on pretrial release.

¶ 17. Although the trial court did not fully explain the relationship between the factors that it relied upon and its conclusion that defendant posed a risk of flight that could not be mitigated by pretrial release, a court conducting a bail review is not required to explicitly connect the factors that it has relied upon with its ultimate conclusion; rather, following a bail-review hearing the court simply must set forth a "reasonable basis" for continuing the challenged condition of release. Id. § 7554(d)(1). If the factors relied upon are a "reasonable basis" for continuing the condition imposed, then the court has done all that it must. See id. We do not disturb the court's conclusion in this regard because it is supported by the record. Id. § 7556(b).

¶ 18. Defendant argues that the trial court was statutorily required to "utilize" the public-defender application when assessing his financial resources and his ability to post bail. We interpret statutes according to their plain language. State v. Pellerin, 2010 VT 26, ¶ 7, 187 Vt. 482, 996 A.2d 204. And we review without deference the trial court's legal conclusion that under 13 V.S.A. § 7554(a)(1)(D)-(E), the revised statute governing the imposition of cash bail or surety bond, the court may elect not to consider the application for public-defender services when assessing a defendant's "financial means" without providing a reason for not doing so.

¶ 19. The statutory language here is clear: courts must "take into account . . . financial resources, including an accused's ability to post bail" based upon "available information" when

8

deciding whether to impose a condition of release. 13 V.S.A. § 7554(b)(1). Public-defender applications plainly contain "available information" when provided to the court during a bail-review hearing. Here, the trial court refused to consider the public-defender application upon request by defendant, even though the State did not object. And the court did not articulate its reasons for refusing to do so. Under these circumstances, this was an error; however, it was harmless because the court took counsel's representation as true that defendant was "not a person of means." See State v. Nash, 144 Vt. 427, 434, 479 A.2d 757, 761 (1984) (recognizing the "fallibility" of trial participants and noting that courts should take caution when fashioning rules that "mandate automatic reversals" so as not to become "impregnable citadels of technicality") (quotations omitted)). Accordingly, we hold that public-defender applications must be "take[n] into account" under the circumstances of this case—specifically, when one party requests that the court consider a public-defender application at a bail-review hearing for the purpose of establishing an accused's financial resources, the opposing party does not object, and the court does not offer any reason for failing to do so.[6]

¶ 20.     We note that to "take [a public-defender application] into account" simply means that a court must consider the information in a public-defender application when requested to do so and when there is no objection by the opposing party. The information contained in the application, as well as all the other information before the court, still must be analyzed to determine whether it is reliable and sufficient to prove what it is offered to show. A court considering a public-defender application will determine what weight to give it. Similar, and perhaps additional, procedures to those available when a court reviews an application for public-defender services would be appropriate in the bail review setting where such an application has

---

[6]     Defendant does not argue, and we do not hold, that the public-defender application must be taken into account in all cases in which there is such an application in the court file, even if not requested by the parties. This is consistent with the rules of evidence on the taking of judicial notice of adjudicative facts. See V.R.E. 201(c)-(d) (granting courts discretion to take judicial notice, whether requested or not, but requiring courts to take judicial notice if requested by a party and supplied with the necessary information).

been offered and the veracity of the information in that application is challenged. See 13 V.S.A. § 5236(d)-(e) (permitting clerk of court or judicial officer to require applicant for public-defender services to provide court with additional "proof of income" and to request from Commissioner of Taxes a "nonspecific report of the adjusted gross income as shown on the [applicant's] Vermont tax return").[7]

¶ 21. Defendant argues that the revisions to 13 V.S.A. § 7554 have created an opportunity for the Court to implement policy changes. He advocates that we interpret the statute to require that the maximum amount of bail imposed not exceed the maximum fine that could be imposed under an accused's charges. However, "[w]hen construing a statute, our paramount goal is to effectuate the intent of the Legislature." State v. Rajda, 2018 VT 72, ¶ 14, __ Vt. __, 196 A.3d 1108 (quotation omitted). If the Legislature had intended to change the law in this way, it would have done so explicitly, just as it has for misdemeanor charges. See 13 V.S.A. § 7551(b) (prohibiting the imposition of bail exceeding $200.00 for persons charged with a misdemeanor that is eligible for expungement). We therefore cannot accept defendant's invitation to reconstitute the bail statute in this way.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 22. **SKOGLUND, J., dissenting.** Because the trial court decision does not comply with the amended statutes governing the imposition of bail, I would reverse. This Court has often acknowledged the understanding that Vermont "constitutional values require that liberty is

---

[7] "Financial information" obtained under subsections (d) and (e) of the public-defender-services statute is "confidential" and only available for review by the clerk or judicial officer, or the person who has provided it. 13 V.S.A. § 5236(f)-(g). However, we note that any decision by a defendant at a bail-review hearing to request that a court take into account "financial information" furnished under subsections (d) or (e) would constitute a waiver of confidentiality to whatever extent the confidential information is relevant to the court's determination regarding a defendant's finances.

and must remain the norm and detention prior to trial . . . is the carefully limited exception." State v. Sauve, 159 Vt 566, 573, 621 A.2d 1296, 1301 (1993) (quotation omitted). Our Constitution explicitly guarantees bail as a matter of right to people not charged with offenses punishable by death or life imprisonment. Vt. Const. ch. II, art. 40 ("Excessive bail shall not be exacted for bailable offenses. All persons shall be bailable by sufficient sureties, except [three specific conditions]."). We have opined that "[o]ne of the laudable purposes of the bail [statutes] is to avoid the deliberate use of an unattainable bail figure to accomplish a restraint for the protection of the community, since restraint is . . . possible under authorized conditions set out in" the statutes. State v. Roessel, 132 Vt. 634, 636, 328 A.2d 118, 119 (1974) (per curiam). And, yet, courts continue to routinely impose bail as part of the conditions on release set for the accused. This does not serve the liberty rights at issue or the critical consideration of freedom before conviction. Last year in 2018, the Legislature attempted, once again, to inform the question of when and why bail should be required when a person is charged with a crime. 2017, No. 164 (Adj. Sess.), §§ 1-8.[8]

¶ 23. The Legislature passed and the Governor signed into law Act 164, "[a]n act relating to bail reform," through which the Legislature tried to make very clear that incarceration for failure to meet bail should not be the norm. Section 3 of Act 164, which amended 13 V.S.A. § 7554(a)(1), specified that the accused "shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond . . . unless the judicial officer determines that such a release will not reasonably mitigate the risk of flight from prosecution." (Emphasis added.) Prior to this amendment, judges were to assess whether bail was necessary to "ensure the appearance of the person" at future proceedings. Now, instead, a judge must decide if conditions are needed to lessen the risk that the accused may attempt to flee

---

[8] In the same Act, the Legislature put a cap on the amount of bail that could be imposed on misdemeanor offenses that are eligible for expungement of a maximum amount of $200.00. Everything about the legislation points to a new way of avoiding pretrial incarceration. 2017, No. 164 (Adj. Sess.), § 1.

from prosecution. "Flight from prosecution," under the new law, "means any action or behavior undertaken by a person charged with a criminal offense to avoid court proceedings." 13 V.S.A. § 7576(9). I understand this new language as a requirement that a judge must identify specific behaviors that demonstrate attempts to hide out, flee the jurisdiction, escape from custody, or some action that is specifically designed to avoid prosecution.

¶ 24. In State v. Toomey, we spoke of the factors to be taken into account when determining bail and listed the following:

> (1) ability of the accused to give bail, (2) nature of the offense, (3) penalty for the offense charged, (4) character and reputation of the accused, (5) health of the accused, (6) character and strength of the evidence, (7) probability of the accused appearing at trial, (8) forfeiture of other bonds, and (9) whether the accused was a fugitive from justice when arrested.

126 Vt. 123, 125, 223 A.2d 473, 475 (1966). So, fifty years ago the factors to be considered were strikingly similar to those of today with the additional item of being a fugitive from justice. In an attempt to end the routine use of monetary bail, and in consideration of the explosion of incarceration rates, I suggest the bail reform legislation is intended to stop the pervasive automatic imposition of bail on every accused[9] that appears before the court. The new language imposes a requirement that a judge identify behavior that demonstrates an intent to avoid prosecution before they can decide that release on personal recognizance or under an unsecured appearance bond is not sufficient and impose bail. Only when evidence of such intent is shown should bail be imposed.

---

[9] I use the term "accused" throughout this dissent because Mr. Rougeau is just that, accused. And, I note, the Legislature refrained from using the term "defendant" in the bail statutes, preferring to refer to "a person charged with a criminal offense." I cannot speak for the Legislature, but I chose to use the label "accused" to emphasize that the presumption of innocence still exists.

¶ 25. In this case, the State argued that the fact Mr. Rougeau's family members were ready and willing to post bail actually supported the imposition of bail.[10] That logic escapes me. The State argued that the definition of "risk of flight" meant "any behavior to avoid prosecution . . . it is some intent of not being here," and it posited that Mr. Rougeau had "made it clear that he did not want to be prosecuted and that's why we charged him with interference with access to emergency services. That's why he said that the police were going to kill him." Thus, according to the State, because Mr. Rougeau allegedly disconnected the initial call to emergency services, bail was needed to mitigate the risk he would avoid prosecution. Thus, according to the State, the fact that Mr. Rougeau feared the police were going to kill him supported the imposition of bail to mitigate the risk he would avoid prosecution. Again, my search for logic in those arguments proves futile.

¶ 26. The officer's affidavit reveals a man that was very intoxicated on the night of the incident and who didn't want to be arrested, sure. But how is that evidence that he will attempt to avoid court proceedings? Then the State argued Mr. Rougeau was suicidal and homicidal. "This was anger." Maybe. It was also the raving of a drunk man. That does not equate to any behavior or action on the part of Mr. Rougeau that showed an intent at some future time to avoid prosecution.

¶ 27. Finally, the State argued that bail was required due to Mr. Rougeau's criminal record, including one failure to appear at a court proceeding in 2003. However, his prior involvement with the criminal justice system was long ago, did not involve violent offenses, and, as his attorney noted, he successfully completed probation.

¶ 28. This Court's review of bail determinations is quite limited. We must affirm an order imposing bail "if it is supported by the proceedings below." 13 V.S.A. 7556(b). In this case, the proceedings below do not support the imposition of bail. There were no facts

---

[10] The State contended: "He clearly has at least a number of people, family members, who would be willing to stake their own money to either believe that he would appear to be prosecuted or would be able to bring him here to be prosecuted."

13

supporting a risk of flight from prosecution. Thus, the court's exercise of discretion cannot be sustained.

¶ 29. At the hearing on Mr. Rougeau's motion to review bail, the court began by discussing the allegations of the crime—the use of a weapon and risk to others. The court acknowledged that Mr. Rougeau had significant ties to Bennington County, having been born and raised there, "which mitigate his risk of flight from prosecution." Also in Mr. Rougeau's favor was the fact that he had worked for one employer for thirteen years. Then the court found Mr. Rougeau's behavior on the night of the incident put several people at risk of harm; that his mental condition on that night was unstable. The court made no finding on Mr. Rougeau's character and noted the one failure to appear from fifteen years earlier. The court recognized the new bail statute's emphasis on consideration of defendant's financial means but refused to review the public-defender affidavit as evidence. He acknowledged the new statute required "an affirmative risk of flight," but then failed to offer any explanation of how the facts established at the hearing supported the need for bail to mitigate a risk of flight to avoid a court proceeding.

¶ 30. His final words reveal his failure to use the new statute:

> [T]he overriding issue in this case is the seriousness of the offense and the facts and circumstances of the offense and the situation that occurred on that evening start to finish. Not just how it ended, but how it even began and how the police officers got involved with it and the like, all do create a risk of flight from prosecution.

How the situation began and how it ended were, apparently, infused with alcohol, which excuses nothing, but is only information of what took place. At a bail-review hearing, the questions are who is the accused standing before the court and will they stick around for trial? The behavior of an accused at the time of arrest is one thing, but is it behavior that shows the accused will attempt to avoid court proceedings? And the seriousness of an offense, alone, cannot be sufficient under the new statute to trigger the need for bail.

¶ 31. Here, the court simply approached the question of bail as if the new statute did not exist. Yes, holding Mr. Rougeau on a bail amount that cannot be met will "mitigate" the risk of

14

flight, but that is exactly the practice the Legislature wanted to stop. Section 7554(a)(1) requires a finding that release on personal recognizance or unsecured appearance bond would not reasonably mitigate a true risk that the accused would seek to avoid prosecution. The evidence, findings, and conclusions generated in the bail-review hearing do not support the imposition of a $100,000 bail on Mr. Rougeau.

¶ 32. In this case, Mr. Rougeau had successfully completed probation in the past; was born and raised in Vermont; had family, including a daughter, living in Vermont; and had worked for the same employer for thirteen years. Further, as a result of the shotgun blast to his torso, he now had health issues that affected his mobility. Finally, I note, he waived extradition to return to Vermont from New York where he was hospitalized as a result of his wounds. It does not sound as if he, in any way, sought to avoid prosecution.

¶ 33. I see nothing in the record as it stands that supports the bail amount imposed. I would reverse, strike the bail amount, and remand for consideration of any conditions of release considered necessary in a release pending trial.

_____
Associate Justice

¶ 34. **ROBINSON, J., dissenting.** I, too, dissent. I write separately because I dissent on slightly different grounds: I believe the trial court's failure to consider all available information concerning defendant's ability to post bail was not harmless. I would remand rather than rule as a matter of law that defendant in this case cannot be required to post cash bail.

¶ 35. To further explain my position—both my dissent from the majority as well as my departure from Justice Skoglund's dissent—I consider the impact on our law of the two 2018 amendments to Vermont's bail statute that are most relevant here: the shift in focus from ensuring a defendant's appearance in court to mitigating the risk of flight, and additional language requiring consideration of a defendant's financial ability to post bail. 2017, No. 164

(Adj. Sess.), § 3.[11]  Considering these changes as applied to this record, I conclude that a trial court could find a risk of flight, but the court here failed to give due consideration to defendant's finances.

## I.  Risk of Flight

¶ 36.    In 2018, the Legislature amended 13 V.S.A. § 7554(a)(1), dealing with the release of any person charged with an offense other than those held without bail pursuant to § 7553 or §7553a, as follows:

> (1) The defendant shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer unless the judicial officer determines that such a release will not reasonably ~~ensure the appearance of the person~~ mitigate the risk of flight from prosecution as required.  In determining whether the defendant presents a risk of ~~nonappearance~~ flight from prosecution, the judicial officer shall consider, in addition to any other factors, the seriousness of the offense charged and the number of offenses with which the person is charged.  If the officer determines that ~~such a release will not reasonably ensure the appearance of the defendant as required~~ the defendant presents a risk of flight from prosecution, the officer shall, either in lieu of or in addition to the methods of release in this section, impose the least restrictive of the following conditions or the least restrictive combination of the following conditions that will reasonably ~~ensure the appearance~~ mitigate the risk of flight of the defendant as required . . . .

2017, No. 164 (Adj. Sess.), § 3.  The Legislature defined "flight from prosecution" to mean "any action or behavior undertaken by a person charged with a criminal offense to avoid court proceedings."  Id. § 5 (amending 13 V.S.A. § 7576).  Throughout the balance of the statute,

---

[11]  The 2018 law made a number of other consequential amendments to the bail statute that are not directly relevant here.  See, e.g., 2017, No. 164 (Adj. Sess.), § 1 (capping bail for certain misdemeanors at $200); id. § 2 (authorizing prosecutors as well as law enforcement officers to contact a judicial officer for a determination of temporary release, and requiring the provision of certain information to the judicial officer in connection with the determination of temporary release pursuant to Vermont Rule of Criminal Procedure 5(b)); id. § 4 (limiting circumstances in which violations of conditions of release can support revocation of the right to bail); id. § 7 (providing that defendants held without bail pursuant to 13 V.S.A. § 7553 or § 7553a are not eligible for statutory home detention pursuant to 13 V.S.A. § 7554b).

16

references to "ensuring the appearance" of the defendant have accordingly been changed to "mitigating the risk of flight" of the defendant as required.

¶ 37.  This amendment effects a subtle change in the purpose of bail and a significant decrease in the degree of confidence as to future appearance required for a court to release the defendant on personal recognizance or unsecured appearance bond.

¶ 38.  The subtle change is the shift in focus from "nonappearance" to "flight."  Without further clarification, these concepts could be quite different; "flight" could be understood to describe attempts to flee the jurisdiction or to go into hiding within Vermont in order to avoid service of an arrest warrant for failure to appear.  But the newly enacted definition of "flight from prosecution," which includes <u>any</u> action or behavior undertaken to avoid court proceedings, is far broader.  See 13 V.S.A. § 7576(9).  It does not include accidental or unintentional failures to appear in court when required,[12] but it does bring the focus of the statute back to a defendant's future <u>appearance in court</u>, rather than on actions such as leaving the state or hiding to avoid arrest for nonappearance.  For that reason, to the extent there is a distinction between "nonappearance" and "risk of flight," it is subtle.  If the Legislature intends for courts to limit the imposition of bail to only those cases in which a court concludes that a defendant poses a risk of fleeing the jurisdiction, escaping custody, hiding out, or otherwise attempting to evade prosecution (as opposed to simply not coming back to court when required), it has not said so.

¶ 39.  The significant change is the change from "ensuring" appearance to "reasonably mitigating" the risk of flight.  This change is significant because it clearly signals that the Legislature is no longer calling upon trial judges to "ensure" that defendants appear in court when required.  Had it intended to do so, it would have called upon courts to "eliminate" the risk of flight.  Its use of the term "reasonably mitigate" reflects that the Legislature accepts and endorses a reasonable degree of uncertainty as to whether a defendant will appear in court when

---

[12]  The trial court recognized this subtle change in the statutory requirements when evaluating the risk of flight.

17

scheduled as a fair trade-off for the cost savings and perceived increased fairness of a system in which courts impose bail requirements in fewer cases. As a practical matter, this change incrementally raises the bar for requiring bail, and should reduce the number of defendants required to post bail.

¶ 40. In this case, the trial court recited the proper standard. In concluding that defendant poses some risk of flight, the court relied most heavily on two considerations specifically identified by the Legislature—the nature and circumstances of the offense charged and the accused's mental condition at the time of the alleged offenses. See 13 V.S.A. § 7554(b)(1). The court acknowledged the other statutory considerations pertinent to the risk-of-flight determination, including defendant's length of residence in the community and employment, and concluded that notwithstanding these factors, he posed some risk of flight. See id. Although I think it is a close case, regardless of my own view as to whether some bail is necessary to reasonably mitigate the risk of flight in this case, I cannot join the dissent's conclusion that as a matter of law on this record the trial court exceeded its discretion in concluding that defendant posed some risk of flight.

## II. Ability to Pay

¶ 41. The amendment to § 7554 as to the defendant's ability to post bail does not appear to substantively change our pre-amendment interpretation of the bail statute, and does not provide specific guidance as to how the defendant's ability to pay figures into the calculus. See 13 V.S.A. § 7554(a)(1)(E), (allowing court to require execution of surety bond with sufficient solvent sureties, or deposit of cash in lieu thereof, "[u]pon consideration of the defendant's financial means"); id. § 7554(b)(1) (identifying accused's ability to post bail as one consideration court should consider in imposing conditions of release). Nevertheless, given the court's declination to review available information about defendant's finances upon defendant's request, and its limited consideration and findings concerning defendant's finances as they relate to the bail amount it set, I would remand.

18

¶ 42. Prior to the 2018 amendment, this Court considered the significance of a defendant's "financial resources" in the pretrial release calculus. State v. Pratt, 2017 VT 9, 204 Vt. 282, 166 A.3d 600. Noting that the statute required consideration of a defendant's "financial resources" as a factor in the bail-setting analysis, this Court concluded that "financial resources" are closely related to a defendant's "ability to pay." Id. ¶ 16. We held that "a defendant's financial resources may affect a defendant's ability to post bail at a particular level and is among the factors a court should consider in setting bail." Id. But we also concluded that the statute did not require the court to find that a defendant has the ability to pay bail at the level set by the court. Id. ("If the Legislature had intended to require a court to find that a defendant has the ability to pay the bail set by the court, the Legislature would have said so."). We did note that "courts should be particularly circumspect in exercising their discretion to set bail at a level that a defendant cannot meet," given that pretrial detention cuts against the presumption of innocence at the heart of our criminal justice system. Id. ¶ 17.

¶ 43. As introduced, the bail reform bill that was enacted into law in 2018 allowed a court to require a defendant to post a secured appearance bond, a surety bond, or cash "[u]pon a finding establishing the defendant's financial means." H.728, 2017-2018 Gen. Assem., Bien. Sess. (Vt. 2018) (as introduced in the House, Jan. 30, 2018), https://legislature.vermont.gov/ Documents/2018/Docs/BILLS/H-0728/H-0728%20As%20Introduced.pdf [https://perma.cc /4U2P-YRAN]. In reviewing the bill as initially proposed with the House Judiciary committee, Legislative Counsel explained that the requirement that the court make a finding was new, but the idea that the court consider the defendant's financial means was not entirely new, given that 13 V.S.A. § 7554(b) already required that. An Act Relating to Bail Reform: Hearing on H.728 Before House Comm. on Judiciary, 2017-2018 Bien. Sess. (Vt. Jan. 31, 2018), https://vermont.access.preservica.com/digitalFile_5e643d4e-2f3b-44bf-90c2-63b31610de3c/ (at 28:21) [https://perma.cc/9A6N-9B87]. Relatively quickly, the House Judiciary Committee modified the language to require "consideration" of the defendant's financial means, rather than

19

a finding. See H.728, An Act Relating to Bail Reform: Hearing on H.728 Before House Comm. on Judiciary, 2017-2018 Bien. Sess. (Vt. Feb. 2, 2018), https://vermont.access.preservica.com/ digitalFile_b373f56e-6d73-4a90-b6d9-fb33a670a282/ [https://perma.cc/RU7M-LQXX]. In a subsequent hearing, Legislative Counsel explained to the House Judiciary Committee that the "upon consideration" language was adopted as a "lightening up" of the requirement to make a finding, made in response to concerns about a judge's ability to make an accurate finding regarding a defendant's financial means. An Act Relating to Bail Reform: Hearing on H.728 Before House Comm. on Judiciary, 2017-2018 Bien. Sess. (Vt. Feb. 13, 2018), https://vermont.access.preservica.com/digitalFile_54b0cd04-5398-490e-beb3-996ee8e4901a/ (at 18:30) [https://perma.cc/SZ78-N3WF]. With respect to the applicable considerations and necessary findings in bail-setting, this amendment to the bill essentially conformed the statute to our existing caselaw pursuant to which a defendant's ability to pay is a relevant consideration but is not dispositive in the bail-setting calculus.

¶ 44. Although the Legislature has confirmed that courts must consider a defendant's finances and ability to post bail, it has not given any more guidance as to the significance of the ability-to-pay factor. As we noted in Pratt, reviewing the prior iteration of the bail statute, if the Legislature intended to preclude courts from setting bail at a level that the defendant cannot pay, it would have said so. 2017 VT 9, ¶ 16. If the Legislature intends to allow bail to be set at a level a defendant cannot meet in only a rare class of cases, it has not identified any particular considerations or findings required to justify such bail beyond the general touchstone that the amount in question must be no greater than necessary to reasonably mitigate the risk of flight. Ultimately, this is a question committed to the trial court's discretion.

¶ 45. I agree with the majority that the trial court erred in declining defendant's request that the court consider defendant's sworn affidavit as to his financial resources, filed in connection with his public-defender application. Although the court is not required to credit a defendant's sworn statements concerning finances, it is required, upon request, to consider a

20

defendant's financial resources and ability to post bail "on the basis of available information." 13 V.S.A. § 7554(b)(1). Where a defendant seeks to include the public-defendant application in the bail-review record, that record is "available information." In fact, at that stage in the proceedings, it may be the only available information concerning the defendant's finances.

¶ 46. I part ways with the conclusion that the error was harmless for several reasons. First, although the court concluded on the basis of defense counsel's representation that defendant was "not a person of means," I don't believe that general statement satisfies the requirement, recently reemphasized by the Legislature, that the court consider defendant's finances and ability to post bail based on available information. Insofar as bail, if imposed at all, must be set at the least restrictive level that will reasonably mitigate the risk of flight, 13 V.S.A. § 7554(a)(1), in imposing bail, the trial court must have some understanding of defendant's finances and capacity to post bail. The minimum investment necessary to mitigate the risk of flight may be very different for someone who cannot, even with some struggle, come up with more than $1000 to secure release on bail versus someone who can easily post $25,000. Courts are not expected to make precise findings as to a defendant's income or assets, but should make use of the available information to the extent possible to develop a general sense of a defendant's financial circumstances and ability to raise funds for bail.[13] I don't believe that the court's general acknowledgment that the defendant is "not a person of means" is sufficient in the face of

---

[13] I acknowledge that significant practical challenges make this hard. At the time of a bail-review hearing, the State may have no information about a defendant's finances, and the court may be left with only representations and proffers by defense counsel. As a practical matter, it likely falls to defense counsel to provide information to inform the court's analysis, even if the burden of proof on the bail question ultimately rests with the State. See State v. Duff, 151 Vt. 433, 440, 563 A.2d 258, 263 (1989) (noting that State bears burden of proof in the bail context); State v. Gould, No. 2016-304, 2016 WL 5110144, at *2 (Vt. Sept. 2, 2016) (unpub. mem.), http://www.vermontjudiciary.org/sites/default/files/ documents/eo16-304.bail.pdf [https://perma.cc/R7RX-CNKD] (holding "the sparseness of the record provides little support for the imposition of a $50,000 bail" and remanding for new hearing to "create an adequate record to justify" either holding defendant without bail or imposing conditions of release, and reiterating that "[a]lthough the defendant may offer alternatives," "the State has the burden of proof"). Although the State bears the ultimate burden of proof as to the necessity of bail of a particular amount, the trial court's ability to assess the financial factor depends heavily on the defendant's presentation.

an order for $100,000 bail. Even assuming that the court accepted counsel's representation that defendant was unemployed following the incident leading to his arrest and thus had no income— something the court did not actually say—because it declined to consider the application for public-defender services, the court had no information about defendant's monthly expenses, which were laid out in the public-defender application. Those expenses are an additional factor that bears on his financial resources and ability to post bail.

¶ 47. Second, the court noted that defendant's mother owns a home in Pownal, and indicated that the home could be used "as a surety." This consideration may have supported the imposition of bail if the court had some information about the value of the home and mother's equity in it, as well as mother's willingness to encumber the home to post bail for defendant, to support a finding that mother is a "sufficient solvent surety." 13 V.S.A. § 7554(a)(1)(E). But the record contains no evidence or representations concerning the value of mother's home. And although defense counsel indicated that defendant's family would be posting bail on his behalf, if it was set at a level they could afford, counsel did not indicate that mother was in a position to encumber her home to meet bail. To the extent that the trial court's setting of bail at $100,000 was based on a belief that mother could encumber her home to raise the funds to secure defendant's release on bail, that belief was not supported by the record.

¶ 48. And finally, the court concluded that there was a risk of flight and reviewed the necessary factors, but never indicated that the bail it set, $100,000, was the least restrictive condition that would reasonably mitigate the risk of flight, as the statute requires it to be. Id. § 7554(a)(1) (providing that if court "determines that the defendant presents a risk of flight from prosecution, [it] shall . . . impose the least restrictive of the following conditions . . . that will reasonably mitigate the risk of flight," which can include bail). Throughout the hearing, the court understandably struggled with the lack of statutory guidance as to how to weigh defendant's financial circumstances in the bail-setting calculus, asking both lawyers for guidance as to how to quantify or implement the required consideration of defendant's financial means.

22

Apparently acknowledging that defendant's means are limited, and emphasizing the circumstances and seriousness of the crime with which he was charged, the court maintained the $100,000 bail. It did not actually conclude that this amount was the lowest amount that would reasonably mitigate the risk of flight. Given that the trial court must measure its bail amount against the need to "reasonably mitigate" the risk of flight, and given that the trial court must choose the least restrictive conditions to accomplish this reasonable mitigation, a finding on the basis of the available information that the amount of bail required is the minimum necessary to reasonably mitigate the risk of flight is a necessary bridge between the risk of flight identified by the trial court and the amount of bail the trial court set.

¶ 49.    For these reasons, I would reverse and remand this bail determination for further consideration in light of the above standards. I respectfully dissent.

_____
Associate Justice